STATE of Missouri, Respondent,

v.

Michael A. CLARK, Appellant.

No. 57939.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 16, 1991.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
May 15, 1991.

Robert L. Fleming, Columbia, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Michael Clark, appeals from his jury convictions of first degree robbery and armed criminal action. Since appellant was found to be a prior, persistent and Class X offender, the judge sentenced him to life imprisonment for first degree robbery and a concurrent term of 30 years imprisonment for armed criminal action. While the appellant does not challenge the sufficiency of the evidence to support his convictions, a brief overview of the facts is necessary for an understanding of appellant's three claims on appeal.

At approximately 4:25, on the evening of November 12, 1988, appellant and his companion/codefendant entered Mack's Package Liquor Store in St. Louis County. No other customers were in the store at this time. The only employee present, Virginia Conner, testified that the men wanted to know where the wine was located and that they both faced her as she directed them to the wine.

Shortly thereafter, the two men faced Ms. Conner and inquired about the price of various wine coolers. After choosing their desired purchase, they both approached the cash register where Ms. Conner was located. Ms. Conner testified that they stood very close together and were directly facing her as she proceeded to register their purchase. Appellant was standing to Ms. Conner's left as his companion handed Ms. Conner a ten dollar bill to pay for the wine coolers.

After Ms. Conner opened the drawer to the cash register to make change, appellant's companion reached over the counter and began helping himself to the contents of the register. When Ms. Conner looked up, she noticed that appellant was pointing a handgun at her and that both men were smiling.

After the appellant and his companion had helped themselves to $629.07, they in-structed Ms. Conner to lie down behind the counter and she complied. While Ms. Conner was lying behind the counter, she was able to activate the store's silent alarm.

As the appellant and his companion were about to walk out of the store, John Walker entered the store and picked up two leather gloves which he believed belonged to either the appellant or his companion. Mr. Walker asked the appellant whether he had dropped his gloves and the appellant looked down and said "thank you" as he took the gloves from Mr. Walker. Appellant and his companion then left the store.

Mr. Walker, not yet realizing what had transpired, placed his chosen purchase on the counter and, as he did so, Ms. Conner arose from behind the counter. After Ms. Conner informed Mr. Walker that the two men whom he had encountered had robbed her, Mr. Walker ran outside, was able to view both the appellant and his companion two more times and used a nearby telephone to contact the police. Mr. Walker provided the police with a description of both men and indicated that they were headed in a northerly direction from the liquor store.

Shortly thereafter, Officer Milton Voedli of the Ferguson Police Department noticed two men who fit the description of the suspects walking near railroad tracks north of the liquor store. After he told these two men to "halt, police officer," the men began running. Within fifteen minutes of the robbery, however, both of these men, who later were identified as the appellant and his companion, were apprehended. Between them, they possessed $582.68, only $46.39 less than the amount taken from the liquor store.[1]

Detective Donald Borts, also of the Ferguson Police Department, then returned to the liquor store and asked Ms. Conner and Mr. Walker to accompany him in order to try and positively identify the appellant and his companion as the perpetrators of the crime. Ms. Conner and Mr. Walker got

---

1. Most of the coins which were taken from the store were not recovered. The $582.68 consist-ed primarily of paper currency.

into the unmarked patrol car. Ms. Conner sat in the rear-right passenger seat and Mr. Walker sat in the left rear passenger seat. Appellant and his companion were being held, in handcuffs, by five officers in the driveway of an apartment complex. As Detective Borts' car arrived, appellant was standing and his companion was lying on the ground. Appellant's companion was helped to his feet by the officers, however, in time for Ms. Conner and Mr. Walker to view him. Both Ms. Conner and Mr. Walker positively identified the men as the perpetrators of the robbery.

Both the appellant and his companion were charged by information on February 9, 1989, with first degree robbery and armed criminal action, both of which are felony offenses. After the trial court denied a motion for severance, both men were tried together commencing on October 30, 1989. However, the jury was unable to reach a verdict. The trial court declared a mistrial and both the appellant and his companion were tried again on December 12, 1989. The jury returned on December 15, 1989, and found appellant guilty as charged. This appeal followed.

■ Appellant's first point on appeal is that the trial court was without jurisdiction to place appellant on trial the second time since more than 180 days had elapsed since appellant filed his Request for Disposition of Detainer on May 26, 1989. Both parties agree that the 180 day time period ended on November 27, 1989.

Missouri Revised Statutes § 217.450 (1986) provides that any person who is in a correctional facility may request a final disposition of any untried indictment, information or complaint which is pending in this state. Missouri Revised Statutes § 217.460 provides that, upon receipt of such a request by the court and the State, the indictment, information or complaint "shall be brought to trial" within 180 days. The rule reads as follows:

Within one hundred eighty days after the receipt of the request and certificate, pursuant to sections 217.450 and 217.455, by the court and the prosecuting attorney or within such additional necessary or reasonable time as the court may grant, for good cause shown in open court, the offender or his counsel being present, the indictment, information or complaint shall be brought to trial. The parties may stipulate for a continuance or a continuance may be granted if notice is given to the attorney of record with an opportunity for him to be heard.

In the present case, appellant, who was imprisoned on other charges, filed his request with the State and the court on May 26, 1989, and the State was, therefore, required under RSMo § 217.460 to bring the appellant to trial before November 27, 1989. The trial from which appellant now appeals commenced December 12, 1989. If these were all of the pertinent facts, appellant's argument would be well taken.

However, appellant was, indeed, brought to trial before the 180 day period was exhausted. Appellant's first trial was commenced on October 30, 1989, and ended in a mistrial on November 2, 1989. Thus, the statute was complied with. All that the statute requires is that appellant's trial begin within 180 days after the proper filing of a Request for Disposition of Detainer. *State v. White*, 728 S.W.2d 564, 567 (Mo. App., W.D.1987).

In *White*, the defendant's trial began on the 179th day following his execution of a request for disposition under RSMo § 217.450. *Id.* at 565.[2] On April 2, a mistrial was declared and the case was docketed for retrial on April 7. The Western District stated that the fact that the trial ended in a mistrial and was reset after the 180 day period had run, had no bearing on the timeliness of the commencement of the trial. *Id.* at 567. Every trial is subject to a mistrial, which is sometimes a necessary incident of a trial. *Id.* The court also stated, in dicta, that the resetting of the

---

**2.** The Western District properly determined that the operative day with which to begin the 180 day period was when both the State and court had received a copy of defendant's request. In *White*, this occurred twelve days after its execution. However, the court went on to address in dicta, the precise situation we have in the present case.

trial after the declaration of the mistrial constituted good cause under RSMo § 217.460.

Similarly, in the case at bar, appellant's first trial necessitated a mistrial. The declaration of a mistrial does not change the fact that appellant was brought to trial within 180 days of his request for disposition. The statute has been complied with.

We note, also, that on November 14, 1989, appellant filed a request for a continuance in which he specifically stated that, by requesting a continuance, he waived any claim that his trial was not commenced within RSMo § 217.460's 180 day requirement. Point denied.

■ Appellant next claims that the trial court erred in denying his motion to suppress identification because the "show-up" procedure which was used was impermissibly suggestive. Appellant further challenges that the in-court identification made by both Ms. Conner and Mr. Walker was unreliable.

■ Our review of the admissibility of evidence recognizes that the trial court is afforded broad discretion in these matters. *State v. Clark*, 711 S.W.2d 928, 932 (Mo. App., E.D.1986). The test for the admission of identification testimony is two-pronged: (1) Was the pretrial identification procedure impermissibly suggestive; and (2) if so, what impact did the pretrial identification have upon the reliability of the witness' identification. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989).

Appellant argues that the show-up procedures in the present case were impermissibly suggestive because the witnesses, Ms. Conner and Mr. Walker, were told by an officer that they were to be taken to view two suspects the police had just caught, because the suspects were still in handcuffs and because the only two suspects, appellant and his companion, who were both black, were surrounded by several white police officers.

The instant identification procedure is very similar to that employed in *State v. Overstreet*, 694 S.W.2d 491 (Mo.App., E.D. 1985). In *Overstreet*, three black men ac-costed the victim in the parking lot of a motel. Approximately ten to fifteen minutes after the attack, the victim described her assailants and their vehicle to police. The police pulled over a car which matched the victim's description some thirty minutes later. Another witness had supplied the license plate number of the car the men were driving. *Id.* at 493.

The victim was then told that the police had stopped a vehicle matching her description and she was taken by the police in order to view each suspect and the car. The defendant, Overstreet, was lying on the ground in handcuffs and was surrounded by five police cars whose lights were flashing. *Id.* at 494. Each suspect was brought over to the police car in which the victim was sitting and was placed under spot lights to be identified. *Id.* at 494–95. The victim positively identified all three of the men. *Id.* at 493.

Our court, in affirming the defendant's conviction, recognized that allowing the victim to view the suspect at the scene of the crime or arrest was an approved identification procedure. *Id.* at 495. Moreover, we noted that it was not improper for the police to tell the victim (or witness) that they had a suspect for identification and that the mere fact that a defendant(s) was in handcuffs at the time of the identification did not render the procedure unduly suggestive or unfair. *Id.* However, we did caution against the police encouraging, suggesting or prompting the identifying witness to identify the suspect during the pretrial procedure. *Id.*

While we are not constrained by plain error review, as the court was in *Overstreet*, we do not find that the procedure used in the instant case was impermissibly suggestive. Approximately one-half hour after the robbery, Ms. Conner and Mr. Walker were asked by Detective Borts to accompany him to view two men who were apprehended a short distance away. The police did not encourage or prompt either one of them into identifying the suspects, although Detective Borts may have asked simply whether they were able to positively identify the suspects. Indeed, Ms. Conner

expressed no difficulty whatsoever in identifying both the appellant and his companion. This should not be a surprise since the identification took place a mere one-half hour after the crime and since both Ms. Conner and Mr. Walker had ample opportunity to view the perpetrators at the store. Appellant's claim that the in-court identification was tainted by the suggestive nature of the pretrial procedure must also fail. The "lynchpin" in determining the admissibility of identification testimony is reliability, against which the suggestive identification procedure is compared. *Hornbuckle*, 769 S.W.2d at 93. In our case, the pretrial identification was not improperly suggestive and the in-court identification was not unreliable.

Both Ms. Conner and Mr. Walker had a clear view of both perpetrators at the time of the crime. Ms. Conner viewed the men for three to four minutes and was face-to-face with them at the cash register. Mr. Walker was close enough to kindly return a pair of gloves to the appellant. Also, the description each witness gave to the police was, apparently, fairly accurate. Any minor inconsistencies would go to their credibility.

■ Finally, the pretrial procedure in our case likely enhanced the reliability of the identification since only a very short period of time had elapsed between the crime and the show-up. The shorter this interval, the more reliable the identification is since the details are still fresh in the mind of the witness. *Overstreet*, 694 S.W.2d at 495. Point denied.

Appellant's final point on appeal concerns three statements that the State made during the rebuttal portion of its closing argument. Since these points were not contained in appellant's motion for a new trial, we can only review for plain error. Rule 30.20.

Appellant objects to the following: (1) The State's argument that it was defense counsel's job to confuse the jury; (2) the statement that the jurors should be offended by the appellant's claim that this was a racial case; and (3) the State's questioning the jurors whether they, when they cash

their paychecks, get paid in denominations similar to that which were found on appellant and his companion.

■ We note that the control of closing argument rests within the broad discretion of the trial court. *State v. Noel*, 693 S.W.2d 317, 318 (Mo.App., E.D.1985). Moreover, a conviction will be reversed for improper argument only if the State's remarks had a decisive effect on the jury. *State v. Long*, 768 S.W.2d 664, 666 (Mo. App., E.D.1989). None of the remarks in this case, either separately or when considered together, constitute plain error.

■ Appellant complains that the first two statements made by the State constitute a personal attack upon appellant's counsel. However, appellant's counsel, during his closing remarks, repeatedly introduced the notion that the identification was racially biased since Ms. Conner and Mr. Walker were shown two black men in the presence of five white police officers. In addition, appellant's counsel suggested that the race of the perpetrators figured into the appellant's being charged with the crime in other ways.

The State's rebuttal was merely an attempt to respond to appellant's counsel's claim that the case had a racial aspect to it. The State's notion that appellant's counsel was trying to confuse the jury is a reference to the fact that appellant's counsel brought in the element of racism and was a proper attempt to argue that racism did not play a role in the case.

Likewise, the State's direct statement that the jurors should be offended by the appellant's counsel's argument was an attempt to respond to appellant's attorney's own arguments. Neither of these references constituted an impermissible personal attack upon appellant's counsel.

Appellant complains, also, of the following colloquy during the State's rebuttal argument:

> MS. MORIARTY: . . . How many of you when you cash your paycheck get the denominations like this? . . . . Ladies and gentlemen of the jury, how many of you cash your paychecks—

MR. KESSLER: I'm going to object to her continually personalizing with the jury by their paychecks and the form in which they would cash them.

THE COURT: It will be sustained as to personalizing.

Appellant argues that the court should have admonished the State's attorney, stricken the statement from the record and instructed the jury to disregard the questioned prose. However, appellant did not request any of these remedies. Appellant's only request, in the form of an objection, was sustained, leaving any error unpreserved. See *State v. White*, 782 S.W.2d 461, 465 (Mo.App., W.D.1990).

■ The State's query, while personalized to the jury, sought to question why a person would carry around the various denominations of currency, in such a large amount, which happened to closely correspond to the amount of money which was stolen. Such an inference is itself admissible and, therefore, the failure of the court to take any further corrective action, sua sponte or otherwise, was not error.

Appellant's convictions and sentences are affirmed.

CRIST and AHRENS, JJ., concur.