# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-2777WM, 00-2906WM

_____

| | | |
|---|---|---|
| Lemoine Carter, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | On Appeal from the United |
| | * | States District Court |
| v. | * | for the Western District |
| | * | of Missouri. |
| Michael Bowersox, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: June 11, 2001

Filed: September 11, 2001

_____

Before McMILLIAN, RICHARD S. ARNOLD, and HALL,[1] Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

The State of Missouri appeals from the order of the District Court[2] granting Lemoine Carter's petition for habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury for murder and sentenced to death by the state court judge after the jury failed to reach a decision on punishment. The District Court held that the state

_____

[1]The Hon. Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2]The Hon. Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

judge's failure, in instructing the jury, to apply correctly Missouri's statutory scheme for imposing the death penalty was plain error and deprived petitioner of his Fourteenth Amendment right to due process of law. The Court also held that the failure of petitioner's direct-appeal counsel to raise this error deprived petitioner of his right under the Sixth Amendment to the effective assistance of counsel. Petitioner cross-appeals from the District Court's rejection of his claim that his Fourteenth Amendment right to a unanimous verdict was violated by the trial judge's refusal to re-poll the jury after a juror changed his mind as to guilt during the penalty phase of the trial. We affirm.

## I.

Petitioner was charged with two counts of first-degree murder and two counts of armed criminal action for the April 17, 1994, shooting death of two individuals in a parking lot. At trial, the State presented eye-witness accounts and police reports indicating that following a dispute in a nearby bar, petitioner shot one victim while the victim was on his knees, paused for four or five seconds, and then shot the other victim. The State also presented petitioner's statement to the police that he shot the victims in self defense. Petitioner presented several witnesses who testified that he was a peaceful, hardworking family man. Petitioner testified on his own behalf, denying that he shot the victims and claiming that his statement to the police was induced by promises and threats. On September 30, 1995, the jury returned verdicts of guilty on all four counts. Upon the trial judge's acceptance of these verdicts, the jury was dismissed for the day at 4:55 p.m., to reconvene the next day for the penalty phase of the trial.

At the penalty phase, the State presented evidence of two aggravating circumstances as to one of the murders,[3] and three aggravating circumstances as to the

---

[3]The murder was committed in conjunction with another murder; and the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, or

other.[4] Petitioner presented evidence of three mitigating factors.[5] It is not disputed that the trial court then erred by not following Missouri law in instructing the jury regarding the imposition of punishment. Missouri law provides the following four-step sentencing scheme in first-degree murder cases where the death penalty is not waived:

> The trier shall assess and declare the punishment at life imprisonment without eligibility for probation, parole, or release except by act of the governor:
>
> (1)    If the trier does not find beyond a reasonable doubt at least one of the statutory aggravating circumstances set out in subsection 2 of section 565.032; or
>
> (2)    If the trier does not find that the evidence in aggravation of punishment, including but not limited to evidence supporting the statutory aggravating circumstances listed in subsection 2 of section 565.032, warrants imposing the death sentence; or
>
> (3)    If the trier concludes that there is evidence in mitigation of punishment, including but not limited to evidence supporting the statutory mitigating circumstances listed in subsection 3 of section

---

depravity of mind" because the victim was shot "execution-style." Mo. Rev. Stat. § 565.032.2(2) & (7).

[4]The murder was committed in conjunction with another murder; the murder involved depravity of mind, id.; and the victim was murdered because she was a potential witness to the other murder (submitted as a non-statutory aggravating factor).

[5]Petitioner had no significant history of prior criminal activity; the murders were committed while petitioner was under the influence of extreme mental or emotional disturbance; and petitioner's age at the time of the murders. Id. § 565.032.3(1), (2) & (7).

565.032, which is sufficient to outweigh the evidence in aggravation of punishment found by the trier; or

(4)     If the trier decides under all of the circumstances not to assess and declare the punishment at death.

If the trier is a jury it shall be so instructed. . . . If the trier is a jury it shall be instructed before the case is submitted that if it is unable to decide or agree upon the punishment the court shall assess and declare the punishment at life imprisonment without eligibility for probation, parole, or release except by act of the governor or death.

Mo. Rev. Stat. § 565.030.4.

Here, the trial court skipped the second step with respect to each count of murder. Petitioner's jury was not instructed that if it failed to make a unanimous finding that the death penalty was warranted by evidence in aggravation of punishment, it was required to return a life sentence. The court simply omitted one of the Missouri Approved Instructions-Criminal (MAI-CR) on capital sentencing. These instructions track Missouri's statutory process step by step. In the first step of the procedure, the jury is instructed that it must sentence the defendant to life imprisonment without parole unless it unanimously finds at least one aggravating circumstance:

In determining the punishment to be assessed (under Count ___) against the defendant for the murder of [name of victim in this count], you must first unanimously determine whether (one or more of) the following statutory aggravating circumstance(s) exist(s): [list aggravating circumstances].

You are further instructed that the burden rests upon the state to prove (the) (at least one of the) foregoing circumstance(s) beyond a reasonable doubt. (On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.)

Therefore, if you do not unanimously find from the evidence beyond a reasonable doubt that (the) (at least one of the) foregoing statutory aggravating circumstance(s) exist(s), you must return a verdict fixing the punishment of the defendant at imprisonment for life by the Department of Corrections without eligibility for probation or parole.

MAI-CR 3d 313.40.  The trial court gave this instruction as to each count of murder.

At the second step of the process, the jury should be instructed that it must sentence the defendant to life imprisonment unless it unanimously finds that facts and circumstances in aggravation of punishment warrant a death sentence:

[If] you have unanimously found beyond a reasonable doubt that (one or more of) the statutory aggravating circumstance(s) submitted in [the previous instruction] exists, then you must decide whether there are facts and circumstances in aggravation of punishment which, taken as a whole, warrant the imposition of a sentence of death upon the defendant.

In deciding this question, you may consider all of the evidence presented in both the guilt and the punishment stages of trial, including evidence presented in support of the statutory aggravating circumstance(s) submitted in [the previous instruction].  If each juror finds facts and circumstances in aggravation of punishment that are sufficient to warrant a sentence of death, then you may consider imposing a sentence of death upon the defendant.

If you do not unanimously find from the evidence that the facts and circumstances in aggravation of punishment warrant the imposition of death as defendant's punishment, you must return a verdict fixing his punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole.

-5-

MAI-CR 3d 313.41A. This is the instruction that was not given in petitioner's case. If the instruction had been given, petitioner would have been sentenced to life imprisonment if even one juror found in his favor on this issue.

At the third step, the jury is instructed that it must sentence a defendant to life imprisonment if the jurors unanimously agree that evidence in mitigation outweighs evidence in aggravation:

> [If] you unanimously find that the facts and circumstances in aggravation of punishment, taken as a whole, warrant the imposition of a sentence of death upon the defendant, you must then determine whether there are facts or circumstances in mitigation of punishment which are sufficient to outweigh the facts and circumstances in aggravation of punishment. In deciding this question, you may consider all of the evidence presented in both the guilt and the punishment stages of trial.
>
> As [circumstances] that may be in mitigation of punishment, you shall consider: [list mitigating circumstances].
>
> You shall also consider any (other) facts or circumstances which you find from the evidence in mitigation of punishment.
>
> It is not necessary that all jurors agree upon particular facts and circumstances in mitigation of punishment. If each juror determines that there are facts or circumstances in mitigation of punishment sufficient to outweigh the evidence in aggravation of punishment, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole.

MAI-CR 3d 313.44A. Instructions presenting the substance of this MAI were given.

Finally, at the fourth step, the jury is instructed that it may sentence the defendant to either life imprisonment or death considering all of the evidence in the case:

-6-

[You] are not compelled to fix death as the punishment even if you do not find the existence of facts and circumstances in mitigation of punishment sufficient to outweigh the facts and circumstances in aggravation of punishment. You must consider all the evidence in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.

MAI-CR 3d 313.46A. Instructions tracking this language were given.

The jury was told, pursuant to MAI-CR 3d 313.48A, as to each murder count, that if it was unable to reach a unanimous agreement at either the third or fourth steps of the process, the judge becomes the sentencer. The jury was then instructed on how to fill out the verdict forms. The pertinent part of these instructions read:

> If you are unable to unanimously find the existence of at least one statutory aggravating circumstance beyond a reasonable doubt, as submitted in [the step-one instruction], or if you are unable to unanimously find that there are facts and circumstances in aggravation of punishment which warrant the imposition of a sentence of death, as submitted in [the step-four instruction], then your foreperson must sign the verdict form fixing punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole.

These instructions tracked the language of MAI-CR 3d 313.48A, but they mistakenly directed the jury to consider whether circumstances in aggravation warranted the death penalty as submitted in the instructions for the fourth step in Missouri's capital sentencing scheme. The jury should have been directed to an instruction on the second step based on MAI-CR 3d 313.41A (the instruction that was omitted).

Petitioner's counsel failed to object to this error. After receiving the trial court's charge, the jury retired to deliberate on punishment at approximately 3:00 p.m. At

-7-

approximately 3:45 p.m., the jury sent a message to the judge that a member of the jury had changed his mind on the question of petitioner's guilt. In response to this note, the judge told the jury that the verdict had been accepted by the court, and that they should proceed to the sentencing stage. Petitioner's counsel objected and requested a mistrial, which was denied. At approximately 6:30 p.m., the jury returned the verdict forms stating as to each count that they were "unable to decide or agree upon the punishment."

Petitioner thereafter appeared for sentencing by the trial judge. Among other evidence presented at the sentencing hearing was a letter from one of the victim's sisters describing the impact of the victim's death on the family and expressing the family's wish that petitioner be given the death penalty. The trial judge sentenced petitioner to death on each of the murder counts, and to life imprisonment on the armed-criminal-action counts.

## II.

Petitioner's appellate counsel failed to raise the instructional error for plain-error review on direct appeal. Nor was the matter raised in petitioner's unsuccessful motion for post-conviction relief under Missouri Supreme Court Rule 29.15. In ruling on petitioner's consolidated appeal, the Missouri Supreme Court affirmed petitioner's convictions and sentences, rejecting his numerous claims of ineffective assistance of trial counsel. The Missouri Supreme Court also rejected petitioner's claim that the trial judge erred in refusing to re-poll the jury after receiving a note that a juror had retracted his guilty vote. The Court held that under both Missouri and federal law, once an "unambiguous, unanimous verdict is returned, the jury polled, and the verdict recorded, the verdict is no longer impeachable for lack of unanimity simply because a juror had a later change of mind." State v. Carter, 955 S.W.2d 548, 557 (Mo. 1997) (en banc), cert. denied, 523 U.S. 1052 (1998). The Court conducted a proportionality review of

petitioner's sentence and concluded that it was not disproportionate to those in similar cases.  Id. at 562.

In a motion to recall the mandate, petitioner raised the claim that appellate counsel's performance was constitutionally ineffective for failing to assert on appeal that the trial court's instructional error violated his due process rights.  Because a juror had changed his mind on petitioner's guilt, petitioner argued, it was clear that had the jury been properly instructed, they would have imposed a life sentence.  Thus, it was urged, petitioner would have prevailed on the issue had it been raised on direct appeal for plain error review.  The Missouri Supreme Court summarily denied the motion to recall the mandate.  For purposes of habeas review, that summary decision is presumed to have been on the merits.  See Chambers v. Bowersox, 157 F.3d 560, 566 (8th Cir. 1998), cert. denied, 527 U.S. 1029 (1999).

III.

On June 29, 1998, petitioner filed the present action.  The only claims raised in his petition that are presented by this appeal by the State and cross-appeal by petitioner are that he was denied his constitutional rights (1) to due process by the instructional error, (2) to the effective assistance of appellate counsel by counsel's failure to raise this error, and (3) to a verdict by a unanimous jury by the trial court's refusal to re-poll the jury.  Petitioner submitted the affidavit of appellate counsel attesting that failing to raise the instructional error on appeal was not a tactical decision but was simply an oversight.

The District Court granted habeas relief on the first two claims.  The Court rejected the State's argument that the instructional error was merely a violation of state law and not cognizable under 28 U.S.C. § 2254.  Rather, the Court held that petitioner was deprived of his liberty (and scheduled to be deprived of his life) without due process of law because the trial judge deviated from Missouri's sentencing procedure.

The District Court also held that appellate counsel was constitutionally defective for not raising this claim as plain error, and that petitioner was prejudiced thereby. The Court ordered the State either to conduct a new jury sentencing that comports with Missouri law or to sentence petitioner to life imprisonment without possibility of probation or parole.

On the unanimous-jury claim, the District Court held that there was no clearly established United States Supreme Court precedent requiring that jurors be allowed to change their minds about guilt during the penalty phase of a trial. Therefore, the trial court's refusal to re-poll the jury was not an unreasonable application of clearly established Supreme Court precedent, and federal habeas relief was not available under 28 U.S.C. § 2254(d).

On appeal the State argues that the District Court improperly substituted its judgment for the reasonable judgment of the Missouri Supreme Court on the claim of ineffective assistance of appellate counsel. It maintains that the instructional error involves a question of state and not federal constitutional law. The State further argues that the instructional error was cured by the trial court in its role as sentencer. Petitioner, in his cross-appeal, argues that the District Court erred in rejecting his claim that he was denied his constitutional right to a verdict by a unanimous jury. He also maintains that on the instructional issue, the District Court should have ordered that a sentence of life imprisonment without parole be entered rather than affording the State the option of conducting a new sentencing procedure.

IV.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, limits a federal court's review of a state prisoner's § 2254 habeas petition, as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established law determined by the Supreme Court if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases "but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. The "unreasonable application" inquiry is an objective one. Id. at 409-10. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Thus, "a federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. See also Penry v. Johnson, 121 S. Ct. 1910, 1918 (2001). We review the District Court's conclusions of law de novo. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

## V.

Because petitioner did not raise the instructional error at trial or on direct appeal, he is limited to asserting in this habeas action that appellate counsel was ineffective in failing to raise the matter for plain error review. As the State concedes, there is no procedural bar to this claim because it was raised in the motion to recall the mandate. See Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998). Petitioner asserts that reasonably competent appellate counsel would have argued on appeal that the instructional error warranted vacation of the death penalty both under Missouri law and under the Due Process Clause of the Fourteenth Amendment.

Under Strickland v. Washington, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When the claim involves appellate counsel, a petitioner must show that "there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made." Chambers, 157 F.3d at 566.

In denying the motion to recall the mandate, the Missouri Supreme Court rejected petitioner's claim of ineffective assistance of appellate counsel. We do not know the precise basis for this decision, but we can infer that the Missouri Supreme

Court concluded that either (1) appellate counsel's failure to raise the instructional error due process claim did not fall below an objective standard of competence, or (2) even had appellate counsel raised this claim on direct appeal, he would not have prevailed. We hold that the instructional error in violation of state law violated petitioner's Fourteenth Amendment due process rights, and that either basis for the Missouri Supreme Court's decision to deny the motion to recall the mandate was the result of an unreasonable application of Supreme Court precedent.

As a general rule, a violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment. Chambers, 157 F.3d at 564. However, in Hicks v. Oklahoma, 447 U.S. 343 (1980), the Supreme Court held that

> [w]here . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.

Id. at 346 (citation omitted).

In Hicks, the defendant had the right, under state law, to have a jury fix his sentence. The jury imposed a mandatory 40-year sentence under an invalid recidivist statute. The proper sentencing range was any sentence not less than 10 years. The state court of appeals affirmed the sentence because it was within the range of possible sentences the jury could have imposed in any event. The Supreme Court vacated this judgment, reasoning that there was a substantial possibility that the jury would have returned a sentence of less than 40 years had they been correctly instructed. Thus his right to be sentenced by a jury, a due process interest created by state law, had been violated.

-13-

This Court had occasion to apply Hicks in Rust v. Hopkins, 984 F.2d 1486 (8th Cir.), cert. denied, 508 U.S. 967 (1993). Rust was convicted of murder and, in accordance with Nebraska law, a three-judge panel was convened to determine whether the death penalty was warranted. The panel found four aggravating factors and one mitigating factor, weighed them, and imposed the death penalty. On the same day that the Nebraska Supreme Court ruled on Rust's direct appeal, it decided in another case that aggravating circumstances had to be proved beyond a reasonable doubt. That Court then decided that each circumstance in Rust's case had been proved beyond a reasonable doubt, and affirmed the death sentence. On habeas review, we held that under Hicks, Nebraska law created a liberty interest in being sentenced under the proper standard by a sentencing panel, and then having the Nebraska Supreme Court review that sentence. Because the panel "probably" had not applied the reasonable-doubt standard, Rust was deprived of that interest. Id. at 1492-93.

We also applied Hicks in Toney v. Gammon, 79 F.3d 693 (8th Cir. 1996), holding that Missouri law, under which the trial court had discretion whether to impose sentences concurrently or consecutively, gave a defendant a "constitutionally protected liberty interest in the sentence resulting from the exercise of [the trial court's] discretion" in that regard. Id. at 699-700. This interest was violated when the trial court sentenced the defendant to consecutive sentences, believing that such a sentence was mandatory. Id. at 700.

In Chambers we explained that Hicks and Rust "represent a rather narrow rule: some aspects of the sentencing process, created by state law, are so fundamental that the state must adhere to them in order to impose a valid sentence." 157 F.3d at 565. Here it is clear to us that the requirement that the jury be instructed to impose the death penalty only when they unanimously agree that it is warranted by aggravating circumstances plays an essential role in Missouri's capital sentencing scheme. This step "erects a barrier, in favor of the defendant, which must be surpassed before the jury can even begin to consider whether it should impose the death penalty under the specific

facts of the defendant's case they are deciding. . . . The question whether mitigating circumstances exist does not logically present itself until the jury first finds the existence of at least one aggravating circumstance sufficient to warrant the death penalty." State v. Tokar, 918 S.W.2d 753, 771(Mo.) (en banc), cert. denied, 519 U.S. 933 (1996).

"[T]he order of proceedings [under Missouri's capital sentencing scheme] actually presents an advantage to the defendant by requiring the state to completely prove its aggravating case before allowing the jury to even consider application of the death penalty." State v. Simmons, 955 S.W.2d 729, 743 (Mo. 1997) (en banc), cert. denied, 522 U.S. 1129 (1998). Because the jury here was not given the instruction in question, petitioner was deprived of a state-created liberty interest without due process.

We find support for this application of Hicks in recent cases in our sister circuits. See Murtishaw v. Woodford, 255 F.3d 926, 969-70 (9th Cir. 2001) (erroneous instruction under state law that the jury "shall" return a death sentence if aggravation outweighed mitigation, when the statute did not so limit the jury's discretion, was an arbitrary deprivation of habeas petitioner's due process rights, under Hicks; error was not harmless due to "the jury's potential confusion over the exercise of its statutory discretion"); Rojem v. Gibson, 245 F.3d 1130 (10th Cir. 2001) (failure to give death-penalty weighing instruction, as provided for in state statute, violated due process under Hicks in that it deprived defendant of legitimate expectation under state law that he would receive the death penalty only if aggravating circumstances outweighed mitigating circumstances).

The State argues that, when the instructions are viewed as a whole, there was no due process violation. We cannot agree. Mentioning the second step of Missouri's sentencing scheme in the instruction on filling out the verdict form did not remedy the omission of an instruction on the second step. On the contrary, the verdict-form

instruction could have served only to confuse the jury, because it referred the jury to an instruction on a completely separate aspect of the sentencing scheme.

We conclude that appellate counsel's performance was constitutionally deficient. Reasonably competent counsel would have discovered the instructional error and raised the due process claim on direct appeal. We recognize that an attorney can limit the appeal to those issues which he determines to have the highest likelihood of success. The presumption that counsel's failure to raise the due process claim was a tactical decision, however, is undermined by counsel's affidavit that the instructional error was simply overlooked. See Roe, 160 F.3d at 419 (affidavit by counsel that claim was omitted on appeal not as the result of a strategic decision, but as the result of oversight, negated presumption of competence).

With regard to the prejudice requirement for finding a violation of petitioner's Sixth Amendment right to effective counsel, it does not take speculation to find that there is a reasonable probability that the result of the sentencing phase would have been different had petitioner's jury been properly instructed. We know that one member of the jury at the penalty stage was at least uncertain of petitioner's guilt. Surely there is a reasonable probability that that juror would have decided the omitted second issue in favor of life. Had he done so, a life sentence would have been mandatory under Missouri law. Moreover, had appellate counsel raised the issue on direct appeal, there is a reasonable probability that the outcome of his appeal would have been different.

The State's argument that there is no federal constitutional right to have a jury determine the death penalty misses the mark. Here Missouri law grants a capital defendant the right not to be sentenced to death unless the jury, in the exercise of its discretion, unanimously finds that evidence of one or more aggravating circumstances warrants the death penalty. Petitioner had a legitimate expectation that he would be sentenced in accordance with this provision, an expectation of which he was erroneously deprived by the State.

-16-

We next consider the State's related argument that petitioner's due process rights were not violated because the jury did not ultimately pronounce sentence. According to the State, the trial court's instructional error was cured by the trial court in its role as final sentencer. As noted above, however, in this case there is a reasonable probability that had the jury been properly instructed, it would have sentenced petitioner to life imprisonment, and the question of punishment never would have reached the trial judge. Missouri law empowers a judge to select the death sentence only after the jury first unanimously finds that the defendant is eligible for the death penalty because there exists at least one aggravating circumstance, <u>and</u> that one or more aggravating circumstances warrant death.

We recognize that these questions arise in the special context of plain-error review. Under Mo. Sup. Ct. R. 29.12(b), "[p]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Further, under Rule 30.20,

> [a]llegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

It is of course for the Missouri Supreme Court to interpret and apply its own rules, and we have no power to redetermine questions of state law, including state procedural rules, as such. Missouri cases, however, lay emphasis on the question of whether a miscarriage of justice has occurred, see <u>State v. Hall</u>, 955 S.W.2d 198 (Mo. 1997) (en banc), <u>cert. denied</u>, 523 U.S. 1053 (1998) and this question, in turn, depends upon the

-17-

plainness and gravity of the error and the consequences (here, the death of the petitioner) of failing to notice it.

Thus, the decision whether a miscarriage of justice has occurred depends in large part on one's view of the underlying questions of federal law, here, questions of ineffective assistance of counsel and due process. The plain-error issue, therefore, is not simply a state-law issue. Its resolution depends largely on the view one takes of federal law, and, for reasons we have explained in this opinion, we believe that denial of the motion to recall the mandate was based upon an unreasonable application of federal law, as exemplified by cases of the Supreme Court of the United States, primarily Hicks. An important part of the logical process by which juries in Missouri decide whether to impose the death penalty was omitted. We have held that this omission was a due-process violation. In our opinion, allowing petitioner to go to his death in this situation would be a manifest injustice. Compare Chambers v. Bowersox, 157 F.3d at 566-67.[6]

---

[6]The State argues that appellate counsel's performance was not defective because even had the instructional error been raised on direct appeal, the Missouri Supreme Court would not have reviewed the claim even for plain error but would have held that the claim had been waived. We find this argument unpersuasive. Missouri courts routinely reviewed claims of instructional error for plain error during the time period that petitioner's appeal was pending. See, e.g., State v. Rousan, 961 S.W.2d 831, 852 (Mo.) (en banc), cert. denied, 524 U.S. 961 (1998); State v. Hutchison, 957 S.W.2d 757 (Mo. 1997) (en banc); State v. Doolittle, 896 S.W.2d 27, 29 (Mo. 1995) (en banc); State v. Newton, 963 S.W.2d 295, 298 (Mo. App. 1997). The State's reliance on Carroll v. Schriro, 243 F.3d 1097 (8th Cir. 2001), is unavailing. There, we held that a Missouri prisoner's federal habeas claim of instructional error was procedurally barred because the error was not raised before the trial court, and, during the relevant time period, Missouri courts would not review such claims on direct appeal. Id. at 1101. Petitioner there, however, did not claim that the error was plain error.

In sum, petitioner had a state statutory right to have a jury consider whether circumstances in aggravation of punishment warranted the death penalty. By omitting an instruction on this issue, the trial court violated petitioner's right to due process of law. There is a reasonable likelihood that the result of the penalty phase would have been different had the jury been properly instructed. We agree with the District Court that the Missouri Supreme Court's decision to deny the motion to recall the mandate was an unreasonable application of Strickland and Hicks. Petitioner was denied his Sixth Amendment right and is entitled to habeas relief. This is so even in the plain-error context. To allow the sentence of death to be carried out when a crucial part of the procedure for choosing between life and death was omitted would be a manifest injustice.

## VI.

On cross-appeal, petitioner argues that the District Court should have ordered that a life sentence without the possibility of probation or parole be entered, and erred in giving the State the option of conducting a new sentencing hearing that comports with Missouri law. We believe the District Court fashioned the correct remedy. Although we have held that there is a reasonable probability that the result of the sentencing phase in this case would have been different had the jury been correctly instructed, we do not know for certain that the jury would have imposed a life sentence. The State should have a chance to submit the issue of punishment to a properly instructed jury.

## VII.

Petitioner also argues that the District Court erred in rejecting his Fourteenth Amendment unanimous-jury claim. He submits that in ruling on this issue, which was raised in his direct appeal, the Missouri Supreme Court improperly relied on Missouri cases where impeachment of a verdict was sought due to a change of a juror's mind

after the jury was discharged. He argues that the District Court erred in concluding that there was no clearly established Supreme Court precedent on the issue of a juror's right to change his mind during the penalty stage of a trial. Petitioner relies upon Duncan v. Louisiana, 391 U.S. 145 (1968), and Burch v. Louisiana, 441 U.S. 130 (1979), which hold, respectively, that under the Fourteenth Amendment, state criminal defendants are entitled to a jury trial where they would be so entitled in the federal system under the Sixth Amendment, and that they are entitled to a unanimous verdict.

Petitioner also argues that McDonald v. Pless, 238 U.S. 264 (1915), suggests that it is only after the jury has been discharged that re-polling is forbidden. That case held that in the federal courts a juror cannot impeach the verdict by presenting evidence of his own or his fellow jurors' misconduct in the jury room. He also relies on Missouri's constitutional requirement for a unanimous verdict in criminal cases, and cites several Missouri cases for the proposition that under Missouri law, the jury's verdict is not binding until the jury is discharged. Lastly, he argues that trial efficiency must be weighed against the more substantial constitutional interest of a defendant not to be put to death without a truly unanimous decision of the jury; to say that the non-unanimity of the verdict came too late is to put form over substance.

We agree with the District Court that petitioner has not shown that the Missouri Supreme Court's decision is contrary to, or an unreasonable application of, clearly established federal law. No cases have been cited or found which establish a defendant's constitutional right to impeach a guilty verdict based upon a juror's change of heart during the penalty stage of a bifurcated trial. We do not believe that Duncan, Burch, or McDonald can be read to establish this right. Nor do we believe that Missouri law guarantees this right in a bifurcated trial. Thus, the District Court correctly denied habeas relief on this claim.

Accordingly, we affirm the order of the District Court in all regards.

-20-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.