# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 00-1844

—————

Michael A. Clark,                                    *
                                                     *
            Appellant,         *
                                                     *   Appeal from the United States
        v.                  *   District Court for the
                                                     *   Eastern District of Missouri.
Paul D. Caspari,                                     *
                                                     *
            Appellee.          *

—————

Submitted:  March 15, 2001

Filed:  November 28, 2001

—————

Before HANSEN and HEANEY, Circuit Judges, and BATTEY[1], District Judge.

—————

HEANEY, Circuit Judge.

     Michael A. Clark appeals the district court's[2] denial of his Petition for Writ of Habeas Corpus.  The primary question presented on appeal is whether the state trial

———————————

[1]The Honorable Richard H. Battey, United States District Judge, for the District of South Dakota, sitting by designation.

[2]The Honorable Jean C. Hamilton, United States District Judge for the District of Missouri.

court erred in failing to suppress eyewitness identification evidence that was the product of a purportedly suggestive "show-up" procedure. The district court answered that question in the negative, and we affirm.

I.    BACKGROUND

On November 12, 1988, two African-American men entered Mack's Package Liquor Store in St. Louis County, Missouri. Store clerk Virginia Conner was the only other person in the store. Conner testified that the men wanted to know where the wine was located and that they both faced her as she directed them towards the wine. The two men faced Conner another time to inquire about the price of various wine products, and again when they approached the counter to pay for their purchases. Conner testified that when she opened the cash register, the shorter of the two men reached over the counter and removed some money. When she looked up, Conner saw that the taller man was pointing a gun at her, and both men were smiling.

After the two men removed the money from the cash register, they instructed Conner to lie on the floor behind the counter. When Conner lied down, she was able to activate the silent alarm. As the two men were leaving the store, a customer, John Walker, was entering and had a brief verbal exchange with the taller of the two men about some black gloves that the man had dropped. Specifically, Walker asked the man whether he had dropped his gloves. The man took the gloves from Walker, said "thank-you," and left the store.

After shopping for a short while, Walker approached the counter with his merchandise, whereupon Conner told him that the store had just been robbed. Walker testified that he ran outside and yelled at the two men to stop. He was able to observe the two men when they stopped momentarily, and again a short time later. Eventually, he went to a nearby restaurant to call the police. Walker testified that he described the two men to the 911 operator as a short black man, about 5' 7", and a tall

2

black man wearing a dark jacket and scarf on his head. Walker also testified that he attempted to provide a similar description to a responding police officer, however, the officer drove off as soon as Walker told him the direction that the two men were walking.

About fifteen minutes after the robbery, police officer Michael Doedli observed two black men who matched the description that was provided by the police dispatcher walking near railroad tracks located north of Mack's Package Liquor Store.[3] The men fled after Doedli told them to stop. Fifteen minutes later, police separately apprehended both of these men, who were later identified as Clark and Paige Spears. At the time of his arrest, Clark was wearing jeans, a black corduroy jacket, and a black silk scarf on his head. Spears was wearing a black silky jacket, a blue beret-style hat, and dark pants. Police found a pair of black leather gloves and a blue steel derringer near Clark.

Following their arrest, Clark and Spears were taken to the driveway of a nearby apartment complex, where they were forced to lie face down while handcuffed. A white male police officer with a shotgun stood over them. Several minutes later, Conner and Walker were taken to this location to identify Clark and Spears. When they arrived, Conner and Walker saw Spears being hauled to his feet. Both men were surrounded by white male police officers. Conner, who was visibly shaken by the events, identified both Clark and Spears. Walker identified Clark, and indicated that he was not sure about Spears.

On February 9, 1989, Clark and Spears were charged with first degree robbery and armed criminal action. They were tried together beginning on October 30, 1989.

---

[3]The police dispatcher described the suspects as two black males, one wearing a dark coat and white tennis shoes, and the other wearing a dark coat and a green stocking cap. This description differs from the one provided by Walker, and its origin is unknown.

After the jury was unable to reach a verdict, the court declared a mistrial. Clark and Spears were retried on December 12, 1989. This time, the jury found them guilty.

The state trial court determined that Clark was a prior, persistent, and Class X offender, and sentenced him to life in prison on the robbery count, and thirty years on the armed criminal action count. Clark appealed this conviction and sentence to the Missouri Court of Appeals on three grounds: (1) lack of jurisdiction, (2) impermissible identification (show-up), and (3) improper closing argument. The Missouri Court of Appeals affirmed. See State v. Clark, 809 S.W.2d 139 (Mo. Ct. App. 1991). Clark did not file a motion to transfer the case to the Missouri Supreme Court or a Rule 29.15 motion for post-conviction relief. Instead, he filed a petition in federal court, seeking habeas corpus relief. See Title 28 U.S.C. § 2254.

Clark raised a variety of claims in his Petition for Writ of Habeas Corpus. The district court dismissed Clark's habeas corpus petition with prejudice, finding that all of his claims, other than his claim of ineffective assistance of counsel on appeal, were barred by procedural default because he failed to: (1) file a timely Rule 29.15 motion in the Missouri state court, (2) raise the issues in his Motion for New Trial or on direct appeal, and (3) seek transfer of his direct appeal to the Missouri Supreme Court. See Hall v. Delo, 41 F.3d 1248, 1249 (8th Cir. 1994) (federal habeas review is barred when a federal claim has not been "fairly presented" to the state court for a determination on the merits) (citation omitted). Further, the district court found no actual cause to excuse the procedural default with respect to Clark's failure to file a Rule 29.15 motion, or his failure to raise certain issues in his Motion for New Trial or on direct appeal. See Wainwright v. Sykes, 433 U.S. 72, 90 (1977) (a procedural bar exists to federal collateral review of the claims unless the petitioner can show cause and prejudice for the failure). The district court did find cause to excuse his failure to make a motion to transfer his direct appeal to the Missouri Supreme Court, however, because at the time the Missouri Court of Appeals decided his direct appeal, the prevailing law in this circuit was that a habeas petitioner did not have to make

4

such a motion to transfer in order to satisfy the exhaustion requirement. See, e.g., Dolney v. Erickson, 32 F.3d 381, 383-84 (8th Cir. 1994). The district court found no actual prejudice with respect to any of Clark's grounds to excuse the procedural default, but did discuss the show-up claim at some length. The district court then granted a certificate of appealability on the question of whether the pretrial show-up was impermissibly suggestive. See Title 28 U.S.C. § 2253. This appeal followed.

## II.    DISCUSSION

We first dispense with the State's argument that the district court erred when it found that Clark's show-up claim was not procedurally barred for his failure to file a motion to transfer his case to the Missouri Supreme Court. This issue is controlled by Dixon v. Dormire, 263 F.3d 774 (8th Cir. 2001). See also Coleman v. Kemna, 263 F.3d 785 (8th Cir. 2001); Moore v. Luebbers, 262 F.3d 757 (8th Cir. 2001).

After Clark filed his federal habeas petition, the United States Supreme Court decided that the exhaustion doctrine requires a state prisoner to file for any available discretionary review in the state's highest court prior to filing for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 847-48 (1999). In Coleman, and in Moore, we stated as follows:

> In Dixon we concluded that the O'Sullivan opinion requires Missouri prisoners to seek a discretionary transfer to the Supreme Court of Missouri. Nevertheless, we did not allow the State to assert an exhaustion or procedural default defense in that case because, although the prisoners had failed to exhaust discretionary review, they had bypassed this available remedy before O'Sullivan was filed and in reliance on the State's prior and consistent position that such a transfer was not necessary to exhaustion and would not be asserted as a defense against claims brought in federal court. Id. Our reasoning was based on Ford v. Georgia, 498 U.S. 411, 423-24 (1991), where the Court stated

5

that only a "firmly established and regularly followed state practice" will bar federal court review. There was no firmly established state practice in Missouri of insisting on the exhaustion of discretionary review; to the contrary, the State had consistently asserted that the exhaustion of discretionary review was unnecessary.

Moore, 262 F.3d at 758; see also Coleman, 263 F.3d 785. For the reasons stated in Dixon, we hold that O'Sullivan did not prohibit the district court from considering Clark's habeas petition in this instance "because the State has not previously 'strictly or regularly' relied on the default of this state procedure to bar federal review." Moore, 262 F.3d at 758 (citation omitted). Accordingly, we turn to the merits of Clark's show-up claim.

Clark claims the trial court erred by rejecting his motion to suppress the identification testimony of Conner and Walker. He contends that their identifications were the result of an improperly suggestive procedure, and were unreliable. Under Missouri law, "[i]dentification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive and the suggestive procedure made the identification unreliable." State v. Middleton, 995 S.W.2d 443, 453 (Mo. 1999) (citations omitted); see also State v. Secrease, 859 S.W.2d 278, 279 (Mo. Ct. App. 1993) (stating that under Missouri law, the test for whether identification testimony is admissible depends on whether the identification was impermissibly suggestive, and if so, whether this suggestiveness had an impact on the reliability of the identification).

The circumstances surrounding Walker and Conner's identifications indicate that the procedures used were improperly suggestive. The record reveals that prior to the identifications, Walker and Conner were asked to identify several suspects that had been apprehended by the police. When they arrived on the scene, Walker and

6

Conner saw only Clark and Spears.[4]  Both individuals were handcuffed, and were surrounded by white police officers, one of whom was holding a shotgun.  Under these circumstances, Walker and Conner may have felt obligated to positively identify Clark and Spears, so as not to disagree with the police, whose actions exhibited their belief that they had apprehended the correct suspects.  Essentially, Walker and Conner were given a choice: identify the apprehended suspects, or nobody at all.  This coercive scenario increased the possibility of misidentification.

Although the identification procedures used by the police in this case give cause for concern, Walker and Conner's identifications may nonetheless be admissible, as long as they are reliable.  Reliability "is the linchpin in determining the admissibility of identification testimony."  Manson v. Brathwaite, 432 U.S. 98, 114 (1977); see also Middleton, 995 SW.2d at 453 (citations omitted) ("The linchpin of due process in identification procedures is reliability, not suggestiveness.").  In determining the reliability of a witness's identification, Missouri courts consider: (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the event and the identification. See State v. Littleton, 649 S.W.2d 225, 227 (Mo. 1983) (en banc); see also Brodnicki v. City of Omaha, 75 F.3d 1261 (8th Cir. 1996).

There are several factors which demonstrate that Walker and Conner's identifications may have been unreliable.  First, neither Walker nor Conner were able to provide a detailed description to the police prior to the apprehension of Clark and Spears.  This makes it impossible to assess the reliability of their identifications based on the accuracy of any prior descriptions, and leaves open the possibility that their

---

[4]Neither Walker nor Conner was ever shown any other suspects, photographs, or a lineup.

later descriptions were tainted by their opportunity to view the suspects at the show-up. Further, Conner and Walker's trial testimony was inconsistent. Both witnesses admitted that they had difficulty remembering certain details about the suspects at the time of the robbery, and both gave conflicting testimony throughout the two trials. These factors undercut the reliability of their testimony, and indicate that they may have been inattentive at the time of the crime and uncertain at the time of the identifications. Also, Walker testified that he spontaneously identified Clark before Conner had a chance to voice her opinion. This outburst could have influenced Conner's subsequent identification of Clark.

Despite these concerns, we do not believe the district court erred in affirming the Missouri Court of Appeals. Three factors lead us to conclude that the witnesses' identifications were reliable, despite the questionable circumstances surrounding the identifications. First, both Walker and Conner had the opportunity to clearly view the perpetrators at the time of the robbery. Conner viewed them face-to-face when they asked for her help in finding wine, and also, when they were at the cash register. Walker viewed them face-to-face when he passed them while entering the store, and when he returned a pair of gloves to one of the perpetrators. Also, only thirty minutes elapsed between the time of the crime and the show-up. This short time period allowed Walker and Conner to make their identifications while their recollections were still fresh. See State v. Pettit, 719 S.W.2d 474, 477 (Mo. Ct. App. 1986) (finding that the reliability of identification is greatly enhanced by returning a freshly apprehended suspect to the scene of an offense for prompt identification by eyewitnesses). Finally, there is no evidence in the record to indicate that the police prompted Conner or Walker to positively identify Clark and Spears. Although the record reveals that the police may have made several inquires about the identity of the suspects before receiving a positive identification, there is no evidence to suggest that their questions were designed to elicit a particular response.

8

III.   CONCLUSION

The show-up procedures used in this case were suggestive, and there are several reasons to question the reliability of the identifications. Nevertheless, for the reasons discussed above, we affirm.

HANSEN, Circuit Judge, concurring.

I agree with the result reached by the court but write separately to emphasize the restricted nature of our habeas review and to point out the appropriate level of deference that must be afforded the Missouri Court of Appeals' decision. Following the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, federal courts may grant a state prisoner's petition for writ of habeas corpus in three limited situations: (1) when the state court decision was contrary to clearly established federal law, 28 U.S.C. § 2254(d)(1) (Supp. IV 1998); (2) when the state court decision involved an unreasonable application of clearly established federal law, id.; or (3) when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). Under the first two scenarios, we may look only to the Supreme Court's jurisprudence on a particular issue for purposes of defining what constitutes clearly established federal law. Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

The Missouri Court of Appeals stated in deciding Clark's appeal that Missouri courts employ a two-pronged test to determine the admissibility of identification testimony: "(1) Was the pretrial identification procedure impermissibly suggestive; and (2) if so, what impact did the pretrial identification have upon the reliability of the witness' identification." Clark, 809 S.W.2d at 142 (citing Missouri v. Hornbuckle, 769 S.W.2d 89, 93 (Mo. 1989) (en banc)). The state court went on to conclude that the officers' "show-up" procedure was not impermissibly suggestive and that the

9

nature of the preidentification encounter did not render the subsequent identifications unreliable. Id. at 142-43.

The analysis undertaken by the state court is entirely consistent with the two-part test announced by the Supreme Court in Manson v. Brathwaite, 432 U.S. 98 (1977), although Manson's facts are distinguishable from those present here. In Manson, the Supreme Court stated that in evaluating identification testimony, a court must consider: (1) whether the identification procedures were impermissibly suggestive; and (2) if they were impermissibly suggestive, whether under the totality of the circumstances "the suggestive procedures created a 'very substantial likelihood of irreparable misidentification.'" Manson, 432 U.S. at 116-17; see also United States v. Fields, 167 F.3d 1189, 1190 (8th Cir.) (describing the analysis required under Manson), cert. denied, 526 U.S. 1140 (1999). The Supreme Court also reiterated in Manson the same five factors to guide courts in assessing the reliability of a pretrial identification that the Court previously identified in Neil v. Biggers, 409 U.S. 188 (1972). See Manson, 432 U.S. at 114-16. The Supreme Court of Missouri's development of the proper analysis to be undertaken when identification procedures are challenged can be traced directly to the Supreme Court's decisions in Manson and Biggers. See Missouri v. Higgins, 592 S.W.2d 151, 160 (Mo. 1979) (quoted in Hornbuckle, 769 S.W.2d at 93), overruled on other grounds by Kuyper v. Stone County Comm'n, 838 S.W.2d 436 (Mo. 1992).

While I too am concerned that the identification procedures employed by the police officers were suggestive, the resolution of Clark's appeal turns not on whether they were or were not, but on whether the state court's decision involved an unreasonable application of federal law in determining that the identifications themselves were reliable. This is so because, as our court notes in its opinion, reliability is the analytical "linchpin" to determining the admissibility of identification evidence. The Supreme Court explained in Williams v. Taylor, as relevant here, that a state court decision involves an "unreasonable application of" federal law "if the

10

state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." 529 U.S. at 407. Our task then is not to examine the case as if it were on direct review, applying our independent judgment to determine whether the state court was correct in its decision, but rather we are to determine whether the state court's application of the clearly established federal law (even if erroneous) was objectively reasonable. See Carter v. Bowersox, 265 F.3d 705, 713 (8th Cir. 2001).

The Missouri Court of Appeals in Clark's case applied the appropriate legal framework in making its decision, and it identified and discussed the relevant facts surrounding the identification procedures. Although the state court did not refer specifically to the Biggers factors, it looked to the facts that touch on the Biggers considerations, factors which our court discusses in independent detail in today's decision. Specifically, the state court determined that both Conner and Walker had a clear view of the robbers, that Conner viewed Clark face-to-face for three to four minutes, that both Conner's and Walker's descriptions were "fairly" accurate, that there was a minimal delay between the robbery and the identifications, and that Conner expressed no difficulty in making a positive identification. Clark, 809 S.W.2d at 142-43. Clark presents no evidence now to suggest that the state court's view of the facts was unreasonable based on the evidence presented, and the state court's reliability conclusion is not unreasonable in light of the indicia of reliability upon which it based its decision. Because the Missouri Court of Appeals' decision in Clark's case cannot be labeled as an unreasonable application of the principles enunciated by the Supreme Court in Manson, I concur in our court's affirmance of the district court's judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.