UNITED STATES of America, Appellee,

v.

**Eric HENDERSON, Appellant.**

No. 85–1281.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1985.

Decided Aug. 13, 1985.

Ronald Sherod, St. Louis, Mo., for appellant.

J. Bennett Clark, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* District Judge.

ROSS, Circuit Judge.

Eric Henderson appeals from a final judgment entered in the district court[1] for the Eastern District of Missouri upon a jury verdict finding him guilty of willfully and forcibly assaulting, opposing, impeding, intimidating, and interfering with a United States mail carrier in violation of 18 U.S.C. § 111 (1982). For reversal appellant argues that the district court erred in (1) failing to suppress statements made by appellant while he was in the custody of a postal inspector, (2) allowing expert witnesses to refer to certain statements made by appellant during court-ordered mental examinations, (3) questioning one of the government's expert witnesses during cross-examination upon the court's own initiative, and (4) refusing to grant appellant's motion for acquittal because of insufficient evidence. For the reasons discussed below, we affirm the judgment of the district court.

## I. FACTS

On August 1, 1984, a United States mail carrier, Eli Holt, was delivering mail in a northern residential area of St. Louis, Missouri, when he was accosted by appellant Eric Henderson. Apparently Henderson was anxious to receive a government check so he demanded that Holt give him his mail. Holt had known Henderson for about 4 or 5 months, and Holt was accustomed to having Henderson, and others, demand mail from him, especially on the days when government checks were distributed.

Upon this particular demand, Holt informed Henderson that he did not have his mail because it was being forwarded to Henderson's new address in accordance with the change of address form Henderson had filed. Henderson nevertheless insisted that Holt was carrying his mail and he continued to hound Holt in an effort to obtain the mail. At one point Henderson confronted the mail carrier with a steel rod approximately 3 feet long and an inch in diameter. It does not appear from the record that Henderson made any specific oral or physical threats. The rod was never raised or swung, and Henderson never attempted to grab any mail from the mail carrier. Further words were exchanged. Eventually Holt took a defensive posture clutching his mailbag in front of his chest. He also produced a can of mace. Shortly thereafter Holt retreated into a nearby residence and phoned a postal inspector. Holt's mail delivery was delayed a total of approximately 30 or 40 minutes.

Inspector T.J. Smith responded to Holt's call and began searching for Henderson

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

after discussing the incident with Holt. Meanwhile, the mail carrier continued on his route. Henderson once again confronted Holt while riding in a Cadillac driven by his mother. Henderson demanded his mail using obscene language. The Cadillac then pulled away. Holt noted the license plate number which subsequently enabled Inspector Smith to locate Henderson in the vicinity of his mother's home. Smith arrested Henderson and read him his constitutional rights. On two occasions after the arrest Henderson made certain incriminating remarks. The district court denied Henderson's motion to suppress these statements prior to trial.

During the trial itself the prosecution called to the stand two expert witnesses who were the physicians ordered by the court to examine the defendant's mental condition pursuant to 18 U.S.C. § 4244 (1982). They were called to testify as to the defendant's competency to stand trial and his mental state at the time of the alleged crime. Each physician discussed the defendant's response to a question asked of the defendant in their presence as to whether he would have assaulted Holt if Holt had been a policeman. In addition, during the testimony of one of the physicians the trial judge intervened twice and briefly examined the witness himself. After all evidence was presented, defense counsel moved for judgment of acquittal which the court denied. The jury returned a verdict of guilty, and the defendant was sentenced to two years imprisonment. It was further ordered that he be taken to the Springfield Medical Center for treatment.

## II. DISCUSSION

### A. Incriminating Custodial Statements

▮ After his arrest and after being advised of his rights, appellant Henderson rode with Inspector Smith back to Smith's office. Henderson had indicated that he understood his rights, but he never requested an attorney. During the car ride Henderson asked Smith about the charges against him, discussed the events of the day, and accused Holt of being a homosex-

ual. Smith stated that believing Holt to be a homosexual was no reason to attack him. Henderson denied attacking Holt, and Smith replied, "Well, you had the pipe and you certainly scared him. You made him fear for his safety." To this Henderson responded, "That's what I wanted the mother-fucker to feel. I wanted him to be in fear of his life."

When they arrived at the office, Henderson was again advised of his constitutional rights and he signed a form acknowledging that he understood the rights. Once again he asked Smith to specify the charges and again a conversation took place substantially similar to that which took place in the car. Henderson was then asked to sign a waiver form and he declined to do so. All conversation then ceased.

On appeal appellant argues that the statements he made, indicating his desire to put the mail carrier in fear for his life, should have been suppressed. He contends that the statements were the product of custodial interrogation which took place at a time when no rights had been waived, and the admission of the statements at trial violated his fifth amendment privilege against compelled self-incrimination. We disagree.

When a criminal suspect is arrested and taken into custody the rights and protections afforded the suspect under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are indeed substantial and important. However, the *Miranda* Court made it quite clear that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id.* at 478, 86 S.Ct. at 1630. Since it is obvious that appellant was in custody at the time he made his statements, we must determine whether Inspector Smith compelled appellant to make the statements through interrogation.

In making such a determination the case of *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), is controlling. In *Innis*, the facts show that while riding in the back of a police cruiser a murder suspect overheard two policemen

728

discussing the fact that if the murder weapon, a shotgun, were not located a child from a nearby school might find it and "maybe kill herself." *Id.* at 295, 100 S.Ct. at 1687. The suspect then led the police to the gun and made incriminatory statements. The Supreme Court held that this somewhat evocative conversation did not amount to interrogation. The Court defined interrogation as involving "express questioning or its functional equivalent." This includes "any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 300–01, 100 S.Ct. at 1689 (emphasis added).

Focusing as we must upon the perceptions of appellant at the time, rather than the intent of Inspector Smith, *id.* at 301, 100 S.Ct. at 1689, we hold that the custodial conversation in this case did not amount to interrogation.[2] The district court properly found that appellant's statements were freely and voluntarily made. When appellant initiated conversation by requesting that Inspector Smith specify the charges, the ensuing verbal exchange was nothing more than a conversation "normally attendant to arrest and custody." *See also United States v. Criswell*, 696 F.2d 636 (8th Cir.1983).

### B. Admissibility of Statements Made During Court-Ordered Mental Examination

 Prior to trial, the district court, acting in accordance with the provisions of 18 U.S.C. § 4244 (1982)[3] and FED.R. CRIM.P. 12.2(c), ordered that the defendant undergo psychiatric examination for the purposes of assessing his mental competency to stand trial and his mental capacity on the date of the alleged criminal offense.[4] Thereafter, the defendant was subjected to approximately 90 days of mental examinations and observations performed by two physicians, a psychiatrist and a psychologist. Both physicians testified for the government at trial, and each referred to the defendant's response when asked what he would have done had the mail carrier actually been a policeman. The relevant testimony is as follows:

> DR. FOSTER: [H]e was asked by Mr. Count, the unit manager, if he would have threatened or verbally threatened a policeman who was delivering the mail, and he responded, "No. Do you think I'm crazy?"

> DR. PETTIPIECE: One of the other people that were in the interview at that time asked the question, "Would you have attacked a policeman? If this man had been a policeman instead of a postman, would you have attacked him," and Eric said no, he would not, that, and he asked him why not and he said because the policeman would have a gun and it would be dangerous to attack a policeman, but it wasn't the postman.

Appellant contends that this testimony bore directly on the issue of his guilt, rather than his mental state, and therefore the admission of the statements violated former section 4244 and Rule 12.2(c).[5] The

---

**2.** Since we conclude that appellant was not interrogated, we do not reach the issue of whether appellant validly waived his right to be free from interrogation until counsel was present. *See Rhode Island v. Innis*, 446 U.S. 291, 298 n. 2, 100 S.Ct. 1682, 1688 n. 2, 64 L.Ed.2d 297 (1980).

**3.** Section 4244 has since been substantially amended as to procedure by the enactment of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 403, 98 Stat. 2057–67 (1984).

**4.** The court's authority to order a contemporaneous examination has been clearly established.

The purpose of ordering a mental examination under former section 4244 was only to establish the defendant's competency to stand trial. The statute did not give the court authority to order an examination for the purpose of assessing the defendant's mental state at the time of the alleged offense. ·That power is derived from the court's inherent power, and Rule 12.2(c) expressly permits such an examination. *United States v. Reifsteck*, 535 F.2d 1030, 1033 (8th Cir.1976).

**5.** We note that the Comprehensive Crime Control Act of 1984, *supra* note 3, was enacted, and became effective, in the period between the time

following pertinent language of Rule 12.-2(c) is essentially identical to that of former section 4244:

> No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.

The gist of appellant's argument is that the questions asked of him during his mental examination assumed that he was guilty of the crime charged. Consequently, his response, when testified to at trial, was self-incriminating. Such an argument requires a reading of the limitations of Rule 12.2(c) that is much too broad. Also, since defense counsel failed to object to the testimony at trial this court is constrained to review the issue under the plain error rule. FED.R.CRIM.P. 52(b); *United States v. Faul*, 748 F.2d 1204, 1217 n. 10 (8th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 632 (1985); *United States v. Reifsteck, supra*, 535 F.2d at 1033.

Definite fifth amendment problems may certainly arise when an examining psychiatrist is allowed to give testimony based upon conversations had with a criminal defendant. For this reason Congress could have elected to completely forbid the examining psychiatrist from testifying on the merits at trial. Instead it chose only to limit the testimony. See former section 4244 and FED.R.CRIM.P. 12.2(c). This limitation requires that the psychiatric testimony relate solely to the mental condition of the accused. In this context, however, issues of mental capacity and guilt will necessarily overlap. *United States v. Halbert*, 712 F.2d 388, 390 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 997, 79

L.Ed.2d 230 (1984). While the government should exercise caution when presenting psychiatric testimony it should not be bound by a strict interpretation of the limitation.

In this case, the expert witnesses did not testify to incriminating statements made by the defendant during mental examination. Any inference of guilt suggested by the questions asked of the defendant during examination was too tenuous. The admission of the testimony at trial did not amount to plain error.

**C. Trial Court's Intervention During Cross-Examination**

 On two occasions the trial judge intervened and momentarily took over the questioning of one of the government's expert witnesses during cross-examination by defense counsel. The interventions occurred immediately after the witness responded affirmatively to each of the following two questions asked by defense counsel:

> MR. SHEROD: So, you had a suspicion about your own feelings, you're biased about Mr. Henderson already. Is that correct? * * *

> MR. SHEROD: But in terms of remission, that is an opinion question, that you have to make * * * a judgment about? And is that an educated guess at best, Doctor?

Appellant contends that on each occasion the court used leading questions to get the witness to retract and change his testimony, effectively placing the testimony in a much more credible and favorable position for the government. We do not find the trial court's interventions to be this overreaching.

As long as the court remains impartial and does not become an advocate for either side, it may intervene for the purpose of clarifying legal and factual matters. *Unit-*

the court ordered mental examinations and the time of trial. As between former section 4244 and the related provisions under the Act, there may be some dispute as to which should have applied at trial. *See, e.g., United States v. Kow-*

*al,* 596 F.Supp. 375 (D.Conn.1984). We need not resolve such a dispute at this time. The substance of the language in former section 4244 has been retained and continues to be embodied in Rule 12.2(c).

*ed States v. Woods,* 696 F.2d 566, 570–71 (8th Cir.1982). In view of the compound and confusing nature of the questions asked by defense counsel it is readily apparent that the court's assistance was needed in order to clarify the testimony. The record discloses that the interventions were brief and to the point. Any questioning by the court is to be viewed in the context of the entire record by employing a balancing test to determine overall fairness. *Harris v. Lockhart,* 743 F.2d 619, 620 (8th Cir.1984). Upon such an examination we are unable to find any sign of partiality. No prejudicial error was committed.

### D. Sufficiency of the Evidence

■■■ Finally, appellant argues that his motion for judgment of acquittal should have been granted because of insufficient evidence. It is well established that a conviction will be upheld if there is substantial evidence to support it. *United States v. Dahl,* 734 F.2d 1284, 1285 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 196, 83 L.Ed.2d 129 (1984). Upon an appeal from the denial of a motion for judgment of acquittal, the substantial evidence test dictates that all evidence is to be viewed in the light most favorable to the government and the government is to receive the benefit of all reasonable inferences. *United States v. Watson,* 677 F.2d 689, 691 (8th Cir.1982).

Although the evidence was not great as to an assault against the postal officer we need not decide whether it was sufficient to justify the conviction as to assault only. The record contains ample evidence to sustain the conviction on the basis that Henderson willfully and forceably impeded, intimidated and interfered with a United States mail carrier. A violation under the statute is established by intentional conduct, less than an assault.[6]

6. 18 U.S.C. § 111 provides as follows:
 **§ 111. Assaulting, resisting, or impeding certain officers or employees.**
 Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the per-

For the foregoing reasons, the judgment of conviction is affirmed.

formance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.
 Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.