# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2869

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Braulio Pereyra-Gabino, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: March 12, 2009
Filed: April 16, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Braulio Pereyra-Gabino was convicted by a jury of concealing or shielding from detection illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), and sentenced to twelve months and one day imprisonment which was stayed by the district court. On appeal Pereyra-Gabino challenges the sufficiency of the indictment and the evidence and argues that his First Amendment rights were violated by the prosecution, the jury instructions were flawed, and a sentencing enhancement should not have been applied. We reverse.

Swift and Company operates a meat packaging plant in Marshalltown, Iowa. The plant employs approximately 2,200 people, a significant portion of whom are Hispanic. As required by law, applicants for employment at Swift must complete an I-9 form and submit two types of identification in order to ensure eligibility for work in the United States. Swift also voluntarily participates in E-Verify,[1] a social security number verification protocol operated by the Department of Homeland Security and the Social Security Administration which is designed to provide further assurance of employment eligibility.

Pereyra-Gabino was a senior representative at Swift for the United Food and Commercial Workers Union Local 1149. On behalf of the union, Pereyra-Gabino recruited new members and represented plant workers in their interaction with Swift management. Because Pereyra-Gabino is a native Spanish speaker his recruiting and representation duties typically were directed at Swift's Hispanic employees. Another senior union representative performed similar functions for English speaking employees.

On August 22, 2006, an undercover Immigration and Customs Enforcement (ICE) agent attended a union orientation presentation made to new employees by Pereyra-Gabino. Each of the employees in attendance had already completed the I-9 and E-Verify protocols. During the hour long presentation, which was recorded by the ICE agent, Pereyra-Gabino made several statements which the prosecution considered evidence of concealing or shielding from detection illegal aliens. First, Pereyra-Gabino instructed employees to use authentic identification documents outside of the Swift plant regardless of the form of identification they had presented at work. Second, he offered to facilitate the provision of legal assistance in the event employees were subject to wage garnishment or other penalties associated with their employment identity. Third, Pereyra-Gabino provided his

_____

[1]E-Verify was known formerly as the Basic Pilot/Employment Eligibility Verification Program and is referred to as such in Pereyra-Gabino's appellate brief.

contact number for use in the event a plant worker was apprehended by law enforcement. Finally, he discouraged employees from disclosing their immigration status to him. At trial the prosecution introduced evidence of a contrasting presentation delivered to new English speaking employees in October 2006 by Pereyra-Gabino's counterpart which appeared to be focused on union specific matters.

Pereyra-Gabino was charged on April 25, 2007 with concealing or shielding from detection aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). The indictment states in relevant part:

> On or about June, 2003, and to the present . . . defendant, BRAULIO PEREYRA-GABINO, knowing or in reckless disregard of the fact that aliens, namely, employees of Swift and Company had come to, entered and remained in the United States in violation of law, did conceal, and shield from detection and attempted to conceal, and shield from detection such aliens . . . .

Pereyra-Gabino moved to dismiss the indictment, claiming that the charge was impermissibly vague in violation of the Due Process Clause of the Fifth Amendment because it failed to inform him of the specific date of the acts charged or the specific aliens allegedly concealed and shielded. He also argued that the indictment was duplicitous in violation of the Due Process Clause and his Sixth Amendment right to a unanimous jury verdict because it charged him with shielding and concealing multiple aliens while the allowable unit of prosecution under the statute is a single alien. As Pereyra-Gabino explained, "[b]y listing 'employees of Swift and Company' . . . the conduct charged could involve any of hundreds of individuals who may have worked at the Swift plant in the last four years."

Despite finding deficiencies with the indictment, the district court denied the motion. Although it agreed that the indictment was probably duplicitous, the court

concluded that "any duplicity in the indictment can be cured by an appropriate instruction to the jury requiring that it must unanimously agree on Mr. Pereyra-Gabino's guilt with respect to a specific alien(s)." The district court further determined that the indictment was not vague because the dates of the alleged conduct and the identity of the aliens shielded and concealed are not essential elements of the offense charged. It nevertheless found a bill of particulars to be necessary, explaining "while the form used by the Government in the present case may not render this indictment defective . . . the Government cannot put Mr. Pereyra-Gabino in a more difficult position than if it had charged the offense in a more appropriate manner."

The government filed a bill of particulars on October 5, 2007. Paragraph one stated in relevant part:

> The new worker orientation at Swift consists of a series of meetings. . . . On August 22, 2006, the recorded presentation by the union was given to newly hired Spanish speaking employees by Pereyra-Gabino. A list of participants was prepared broken down by language, sex, employee ID#, name, last four digits of the SS#, and shift.

The government attached a list of twenty eight employees who allegedly attended this meeting. It claimed that six of the individuals had been identified by ICE as "suspect." Paragraph two of the bill stated that "[s]everal individual aliens have cooperated with the government regarding their Swift employment and the activity of Pereyra-Gabino" and listed seven such people, including Veronica Martinez-Mesa, the only one among them who later testified at trial. Paragraph three of the bill stated that "[o]ther individual Swift employees have rented apartments from Pereyra-Gabino. An advertisement would be placed in the Swift plant with a telephone number. Various individual workers would then rent apartments from Pereyra-Gabino." Paragraph four of the bill stated that "[c]ertain of these [renters] have been deported . . . ."

Pereyra-Gabino moved once again to dismiss the indictment, arguing that the indictment as supplemented by the bill of particulars remained vague in violation of the Fifth Amendment and duplicitous in violation of the Fifth and Sixth Amendments because the "bill never states that . . . any of the 2[8] persons listed in the exhibit, or any of the other [seven] persons specifically named, is the alien alleged to be harbored in the indictment." According to the motion, "the jury will have the potential of up to thirty five specific people to chose [sic] from in determining if an alien was harbored. There is nothing that requires the jury to all agree on one individual alien." Pereyra-Gabino also separately moved to dismiss the indictment for violation of the First Amendment because the government intended to use as evidence the recorded union orientation talk which he argued was protected speech under Brandenburg v. Ohio, 395 U.S. 444 (1969).

The district court denied Pereyra-Gabino's second and third motions to dismiss. Although it acknowledged that "the Government's bill of particulars is not a model of clarity" and did not "meaningfully restrict the government in order to fulfill the purpose of the bill," the district court concluded that it could remedy concerns with duplicity by "draft[ing] the verdict forms in such a manner as to ensure that [the] right to a unanimous jury verdict is adequately protected." The district court did rule, however, that "for purposes of the trial, the aliens at issue are limited to those individuals identified by name on the orientation list and those specifically named in the bill." Although the district court agreed that "there are significant First Amendment concerns raised by this indictment and the record thus far," it found it inappropriate to rule on the motion to dismiss until after the government presented its evidence.

A superseding indictment was returned on April 23, 2008. It charged Pereyra-Gabino with false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B), and aggravated identity theft, in violation of 18 U.S.C. § 1028A. On May 1, 2008, five days prior to trial, the government filed a

supplemental bill of particulars listing two additional individuals whom Pereyra-Gabino allegedly shielded and concealed: Miguel Mendoza-Lopez and "the person using the identity of Mohamed Carrasquillo." Although the supplemental bill of particulars identified thirty seven such individuals, the list was narrowed somewhat at trial leaving the jury to consider Veronica Martinez-Mesa, Miguel Mendoza-Lopez, "the person using the identity of Mohamed Carrasquillo," and the twenty eight individuals alleged to have been present at the August 22, 2006 talk.

At trial the government played a recording of the August 22, 2006 talk. Before doing so, the district court acknowledged that whether the presentation was inadmissible protected speech or admissible incitement to imminent unlawful conduct was a close call and presented "many issues and difficulties and a rather unchartered course for this Court." The record reflects that the undercover ICE agent present at the 2006 presentation testified that he had "assume[d]" all those in attendance were eligible to work in the United States because "they're being hired."

Two aliens, Veronica Martinez-Mesa and Miguel Mendoza-Lopez, both former Swift employees, testified to attending union presentations but not the one recorded in 2006 and played for the jury at trial. They testified that during the presentations they attended, Pereyra-Gabino provided his contact information for use in the event plant workers were detained by the police, instructed the new employees to use authentic identification documents outside of the plant, and offered to facilitate the provision of legal assistance. Martinez-Mesa and Mendoza-Lopez also testified to having received legal assistance through Pereyra-Gabino.

After Martinez-Mesa was arrested by state authorities in 2006 for identity theft and forgery, she contacted Pereyra-Gabino for referral to a lawyer. Pereyra-Gabino provided the referral and accompanied her to a meeting where he served as

a translator.[2] The state did not prosecute her, however, because Martinez-Mesa had also been charged by federal immigration officials with social security fraud, use of false documents, and aggravated identity theft which presented a more severe penalty. Martinez-Mesa faced up to seven years imprisonment on the federal charges in addition to deportation. In exchange for her cooperation with the Pereyra-Gabino investigation, which included secretly recording several conversations with him, the government entered into a plea agreement with Martinez-Mesa. Under the terms of the agreement Martinez-Mesa pled guilty to the use of false documents and was sentenced to two months already served, and the government agreed not to pursue the remaining charges. Immigration authorities also appear to have afforded Martinez-Mesa and her husband, who too was in the country illegally, the right to work and remain in the United States.

When Mendoza-Lopez was erroneously subjected to wage garnishment for child support, Pereyra-Gabino referred him to a lawyer who succeeded in having the penalty removed. The wage garnishments resumed again two years later, however, and Mendoza-Lopez wrote a letter to union officials accusing Pereyra-Gabino of "robbery" for having referred him to a lawyer who had only been partially successful. Shortly thereafter Mendoza-Lopez was arrested by immigration officials. Prior to the commencement of deportation proceedings, however, Mendoza-Lopez offered to cooperate with the government in its investigation of Pereyra-Gabino. In exchange for his cooperation, Mendoza-Lopez entered into an agreement with immigration officials authorizing his continued presence in the United States and conferring upon him the right to work.

_____

[2]At trial and within its appellate brief the government repeatedly characterized as a judge, the attorney who was helping Martinez-Mesa, despite ample evidence that the attorney was acting in an advocate capacity (he was a part time state magistrate judge otherwise entitled to practice law). From this it could have been unfairly inferred by the jury that Pereyra-Gabino was attempting to influence a state official acting in his judicial capacity.

Before the jury was instructed, Pereyra-Gabino objected to instruction number twelve. It was later given by the court without modification and read as follows:

> The crime of shielding from detection or concealment of an alien illegally in the United States . . . has three essential elements which are:
>
> 1. One or more of the following individuals was an alien in the United States in violation of the law:
>
>> Veronica Martinez-Mesa
>> Miguel Mendoza-Lopez
>> The person using the identity of Mohamed Carrasquillo
>> Any individual in attendance at Swift union orientation given by defendant on August 22, 2006
>
> 2. Defendant, Braulio Pereyra-Gabino, knew or was in reckless disregard of the fact that one or more of the individuals identified in numbered paragraph one above were in the United States in violation of the law; and
>
> 3. Defendant, Braulio Pereyra-Gabino, knowingly shielded from detection or concealed or attempted to shield from detection or conceal one or more of the individuals identified in numbered paragraph one above . . . .
>
> If all three essential elements have been proved beyond a reasonable doubt as to defendant, then you must find defendant guilty of the crime charged in Count One; otherwise you must find defendant not guilty of the crime charged in Count One. In order to find defendant guilty of the crime charged in Count One, you must find beyond a reasonable doubt that defendant shielded from detection or concealed or attempted to shield from detection or conceal at least one particular alien identified above. If you are unable to agree to at least one particular alien then you must find defendant not guilty.

This instruction was followed by a verdict form which stated in relevant part:

> With regard to the crime of harboring illegal aliens, charged in Count 1, we, the jury, find the defendant Braulio Pereyra-Gabino <u>GUILTY</u>
>
> With respect to the individual aliens at issue, we, the jury, find that defendant Braulio Pereyra-Gabino harbored or attempted to harbor the following illegal alien(s):
>
> > Veronica Martinez-Mesa <u>YES</u>
> > Miguel Mendoza-Lopez <u>YES</u>
> > The person using the identity of Mohamed Carrasquillo <u>NO</u>
> > One or more of the individuals in attendance at Swift union orientation given by defendant on August 22, 2006 <u>YES</u>

The jury found Pereyra-Gabino not guilty of Count Two, identity theft, and Count Three, social security fraud.

After trial Pereyra-Gabino filed a combined post trial motion for judgment of acquittal, new trial, and arrest of judgment. The district court concluded that the verdict regarding individuals who had actually heard the August 22, 2006 orientation talk could not be sustained because there was a lack of direct evidence that any of these individuals was illegally in the United States. The district court sustained the verdict regarding Martinez-Mesa and Mendoza-Lopez after finding the evidence sufficient to support the verdict. Neither had been at Pereyra-Gabino's 2006 speech which the jury had heard at trial. The district court rejected arguments made by Pereyra-Gabino based on the First Amendment, the jury instructions, the nature of the indictment, and other issues. After a finding that Pereyra-Gabino had abused a position of trust, the district court imposed a two level guideline enhancement under USSG § 3B1.3 and sentenced him to 12 months and one day, a fine of $2,000, and two years of supervised release. The district court allowed Pereyra-Gabino to remain on bond pending appeal.

Pereyra-Gabino appeals, claiming: (1) the district erred in not dismissing the indictment as duplicitous and vague in violation of the Fifth and Sixth Amendments; (2) a conviction based in part on his union recruiting speech violates the First Amendment; (3) jury instruction number twelve permitted the jury to convict him of concealing or shielding illegal aliens without finding that each element of the crime was present for the particular alien named in the instruction being considered by the jury; (4) the evidence was insufficient to sustain a verdict for shielding or concealing either Martinez-Mesa or Mendoza-Lopez; and (5) the district court erred in adding a two level sentencing enhancement based on a finding that Pereyra-Gabino abused a position of trust.

We review the district court's jury instructions for an abuse of discretion.[3] Slidell, Inc. v. Millennium Inorganic Chem., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006). In order to be adequate jury instructions must, "taken as a whole adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Rice, 449 F.3d 887, 895 (8th Cir. 2006) (quoting United States v. Sherer, 653 F.2d 334, 337 (8th Cir. 1981)) (internal alteration omitted). "We will reverse a jury verdict . . . when the errors misled the jury or had a probable effect on the jury's verdict." Slidell, 460 F.3d at 1054. Pereyra-Gabino argues that jury instruction number twelve permitted the jury to convict him without finding that each element of the crime was committed with respect to a particular alien concealed or shielded. Pereyra-Gabino contends

[3]The government argues that Pereyra made only a general objection to jury instruction number twelve and that our review should therefore be for plain error. At the close of trial the district court asked for objections to the jury instructions and Pereyra-Gabino informed the court that "[f]or all the reasons stated in the prior motions to dismiss, we do object to Instruction No. 12, the marshaling instruction for harboring, in that it includes multiple aliens in the instruction." We find this objection sufficient to preserve the jury instruction for review. In any event our analysis under the plain error standard would lead to the same conclusion.

that the unanimity instruction did not remedy these errors. After reviewing the instruction and unanimity language, we conclude that Pereyra-Gabino is correct.

The jury instructions describe the elements of the crime charged as follows: First, that "[o]ne or more of the following individuals was an alien in the United States in violation of the law." Second, that Pereyra-Gabino "knew or was in reckless disregard of the fact that one or more of the individuals identified in numbered paragraph one above were in the United States in violation of the law." Third, that Pereyra-Gabino "knowingly shielded from detection or concealed or attempted to shield from detection or conceal one or more of the individuals identified in numbered paragraph one above."

These instructions did not require the jury to find that each individual Pereyra-Gabino "knowingly shielded from detection or attempted to shield from detection or conceal" was "in the United States in violation of law" and that Pereyra-Gabino "knew or was in reckless disregard" of that fact. Instead, the instructions permitted the jury to mix and match "the individuals identified" to the essential elements of the crime charged. While in some circumstances a general unanimity instruction can cure a deficiency in the body of the instruction, see, e.g., United States v. Nattier, 127 F.3d 655, 660 (8th Cir. 1997), neither the unanimity instruction nor the verdict form suffice here. The verdict form also introduces additional uncertainty because it uses the language "harbored or attempted to harbor" to describe the conduct charged while the jury instruction identifies the crime as "shielding from detection or concealment."

It is true that jury instructions need not be "technically perfect or even a model of clarity." United States v. Garcia-Gonon, 433 F.3d 587, 591 (8th Cir. 2006) (quoting United States v. Gianakos, 415 F.3d 912, 920 (8th Cir. 2005)). Nevertheless, they must inform the jury of the essential elements of the offense charged and the government's burden of proof, Rice, 449 F.3d at 895, both of

-11-

which the instructions failed to do in this instance. Although an instructional error will be deemed harmless in light of the overwhelming evidence of guilt, <u>United States v. Cacioppo</u>, 460 F.3d 1012, 1025 (8th Cir. 2006), this is not such a case. The government's proof that Pereyra-Gabino shielded from detection or concealed or attempted to shield from detection or conceal either Martinez-Mesa and Mendoza-Lopez is not overpowering.

Because of our conclusions regarding the instructions and the manner in which the case was submitted to the jury, reversal is in order and we need not reach Pereyra-Gabino's additional arguments. For the reasons previously stated we reverse the judgment and remand to the district court for further proceedings.[4]

_____

[4]On remand the district court may want to start by revisiting Pereyra-Gabino's motions to dismiss the indictment and considering the possible relevance of any of the conclusions here.