# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2361

_____

United States of America,      *
        *
      Appellee,      *
        *    Appeal from the United States
     v.         *    District Court for the
        *    District of Minnesota.
Gregg Allen Pickar,      *
        *
      Appellant.      *
        *

_____

Submitted: March 11, 2010
Filed: August 12, 2010

_____

Before RILEY, Chief Judge,[1] BRIGHT and WOLLMAN, Circuit Judges.

_____

RILEY, Chief Judge.

A jury found Gregg Allen Pickar guilty of bank robbery in violation of 18 U.S.C. § 2113(a), and the district court sentenced him to 210 months imprisonment. Pickar appeals his conviction, arguing (1) the government failed to prove all of the essential elements of § 2113(a); (2) the district court submitted an improper instruction to the jury; (3) the district court improperly acted as an advocate when questioning a witness; and (4) the district court erroneously admitted show-up identification

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

evidence. Pickar also challenges his sentence, claiming (1) the district court procedurally erred in classifying Pickar as a "career offender" under the advisory United States Sentencing Guidelines (Guidelines or U.S.S.G.) § 4B1.1; and (2) his sentence is substantively unreasonable. We affirm Pickar's conviction, but we vacate his sentence and remand for resentencing.

## I.    BACKGROUND[2]

At approximately 1:40 p.m. on March 20, 2008, Pickar entered Citizens Bank's Lakeville, Minnesota, branch. Pickar walked past Pam Comfort, Citizens Bank's greeter, to the counter where Heather Blackwell was working. Pickar said he wanted to make a large withdrawal. Blackwell was helping another customer at the drive-through window, so Blackwell told Pickar she would help him in a moment.

Approximately thirty seconds later, Blackwell returned to the counter to assist Pickar. Blackwell described Pickar as a fifty-year-old white male with a bushy beard, wearing sunglasses, a hat, and a Minnesota Vikings™ jacket. Because of Pickar's appearance, Blackwell was suspicious and uncomfortable.

Without raising his voice, Pickar demanded all of the "hundreds, fifties, twenties, and tens" in Blackwell's drawer. Pickar did not say anything else. Pickar hid his right hand in a pocket of his jacket and put his right arm on the counter. Pickar did not say he had a weapon in his pocket, but Blackwell thought Pickar had a gun and might "hurt [her] or somebody else working in the bank." Blackwell gave Pickar money from one of her drawers, and Pickar looked at the money before he left the building.

---

[2]"We recite the facts in the light most favorable to the jury's verdicts." White v. McKinley, 605 F.3d 525, 528 (8th Cir. 2010) (quoting United States v. Hayes, 574 F.3d 460, 465 (8th Cir. 2009)).

Sara Forrey, a teller at a counter adjacent to Blackwell, overheard the conversation between Pickar and Blackwell. Forrey was frightened but did not see Pickar make any threatening gestures. After Pickar left, Forrey pressed the panic button under her counter. Pamela Stoltenberg, one of Citizens Bank's managers, dialed 911 to report the robbery. Comfort and Forrey watched Pickar leave in his vehicle and told Stoltenberg, who relayed a description of the vehicle to the police.

Officer Christopher Gartzke stopped a vehicle matching Stoltenberg's description approximately four or five miles away from Citizens Bank. Pickar was the only person in the vehicle, and he matched the physical description of the bank robber the bank employees provided. During a pat down search, Officer Gartzke found folded bills in Pickar's jacket pocket totaling $1,070, the precise amount of money stolen from the bank.

Officer Gartzke arrested Pickar and brought him to Citizens Bank for a "show-up identification." The show-up identification began approximately forty-five minutes after the call to 911 was placed. Officer Gartzke parked his cruiser approximately twenty to thirty feet away from the bank. Next to the squad car, Officer Gartzke, in uniform, and Detective Andy Bohlen, in plainclothes, stood on either side of Pickar, whose hands were cuffed behind his back. Although it was a bright, clear day, Detective Bohlen shined a small flashlight in Pickar's face to illuminate Pickar's face and prevent Pickar from seeing witnesses inside the bank.

Five witnesses, including customer Brett Bartsch, stood inside the bank and watched Pickar through a tinted window. Detective Russell Helmueller asked the witnesses whether they recognized Pickar. Detective Helmueller did not tell the witnesses they did not have to identify Pickar or Pickar might not be the suspect. All of the witnesses identified Pickar as the man who robbed the bank.

In April 2008, a grand jury returned a one-count indictment charging Pickar with bank robbery in violation of 18 U.S.C. § 2113(a). In May 2008, Pickar filed a motion to suppress the show-up identifications, which the district court later denied after an evidentiary hearing.

In January 2009, a jury found Pickar guilty as charged. The government called four of the five show-up witnesses at Pickar's trial. Each of the four witnesses testified to identifying Pickar at the show-up but none identified Pickar at trial. One of the witnesses, Comfort, did not recognize Pickar at trial, and the government did not ask the other three witnesses whether they recognized Pickar. Pickar filed a motion for judgment of acquittal, which the district court denied.

In June 2009, the district court sentenced Pickar to 210 months imprisonment. In calculating Pickar's advisory Guidelines range, the district court held, over Pickar's objection, that Pickar was a "career offender" under U.S.S.G. § 4B1.1 based in part on his two prior convictions for fleeing a police officer in violation of Minn. Stat. § 609.487(3). This appeal follows.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

We review de novo a challenge to the sufficiency of the evidence. See United States v. Johnson, 519 F.3d 816, 821 (8th Cir. 2008). Evidence must be viewed "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (quoting United States v. Zimmermann, 509 F.3d 920, 925 (8th Cir. 2007)). The standard of review for a challenge to the sufficiency of the evidence is "very strict" and the conviction will be reversed only if "no reasonable jury could have found [Pickar] guilty beyond a reasonable doubt." United States v. Horn, 523 F.3d 882, 890 (8th Cir. 2008) (quoting United States v. Beck, 496 F.3d 876, 879 (8th Cir. 2007)).

### 1. FDIC Insurance

Pickar contends the government failed to prove Citizens Bank was insured by the Federal Deposit Insurance Corporation (FDIC). See 18 U.S.C. § 2113(f). The only evidence the government offered to prove Citizens Bank was FDIC-insured was the testimony of Keith Sperbeck, a Citizens Bank vice president and branch manager. The government asked Sperbeck whether the bank was FDIC-insured on the date of the robbery, and Sperbeck responded affirmatively. Sperbeck's testimony is sufficient evidence upon which a reasonable jury could find Citizens Bank was FDIC-insured. See United States v. Lewis, 260 F.3d 855, 855 (8th Cir. 2001) (holding the testimony from a bank's branch office manager that the bank was FDIC-insured was sufficient to establish the bank's deposits were federally insured at the time a fraud was committed).

### 2. Intimidation

For a defendant to be convicted of bank robbery, the government must prove the defendant took the money from the bank "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). Pickar argues the government provided insufficient evidence of intimidation at his trial.

The intimidation element of bank robbery is satisfied if an ordinary person in the bank teller's position could reasonably infer a threat of bodily harm from the bank robber's words and actions. See United States v. Yockel, 320 F.3d 818, 824 (8th Cir. 2003). Intimidation is measured under an objective standard, and, therefore, whether the bank robber intended to intimidate the bank teller is irrelevant. Id. Evidence showing the individual bank teller was intimidated subjectively "is probative of whether [the robber's] acts were objectively intimidating." United States v. Caldwell, 292 F.3d 595, 596 (8th Cir. 2002).

The evidence the government presented was sufficient for a reasonable jury to find the intimidation element was satisfied. When Pickar first approached the counter,

Pickar told Blackwell he wanted to make a large withdrawal. Blackwell was assisting a customer at the drive-through window at the time, so she told Pickar she would be with him in a moment. Approximately thirty seconds later, Blackwell returned to the counter to assist Pickar. Blackwell testified Pickar stated he wanted all of her hundreds, fifties, twenties, and tens. While making this demand, Pickar had his right hand in his jacket's pocket, and he placed his right arm on the counter. Blackwell saw Pickar's hand in his jacket pocket, and she believed Pickar may be concealing a gun. At one point, Pickar pushed his right arm with his hand in his pocket towards Blackwell. Blackwell testified she believed if she did not comply with Pickar's demand he would harm her or others. Although evidence Blackwell felt intimidated is not conclusive, such evidence is probative of whether Pickar's actions were objectively intimidating. See id.

These facts are similar to those in United States v. Johnston, 543 F.2d 55, 56 (8th Cir. 1976), where the bank robber "kep[t] his right hand in his right coat pocket in such a way as to make it appear that he had a gun." We held such evidence was sufficient for a jury to find intimidation. Id. at 59. Pickar's actions reasonably could be construed to suggest Pickar possessed a weapon, and an ordinary person in Blackwell's position could reasonably infer a threat of bodily harm from Pickar's actions. Thus, the government presented sufficient evidence for a reasonable jury to find intimidation.

### B. Jury Instructions

"We review the district court's jury instructions for an abuse of discretion." See United States v. Pereyra-Gabino, 563 F.3d 322, 328 (8th Cir. 2009). "'[T]he district court has wide discretion in formulating'" each jury instruction, and we will affirm if the instruction is a "correct statement of the law and supported by the evidence." United States v. Sdoulam, 398 F.3d 981, 993 (8th Cir. 2005) (quoting United States v. Phelps, 168 F.3d 1048, 1057 (8th Cir. 1999)). We affirm if the jury instructions "taken as a whole adequately advise the jury of the essential elements of the offenses charged

and the burden of proof required of the government." <u>Pereyra-Gabino</u>, 563 F.3d at 328 (quoting <u>United States v. Rice</u>, 449 F.3d 887, 895 (8th Cir. 2006)). We reverse when "errors misled the jury or had a probable effect on the jury's verdict." <u>Id.</u> (quoting <u>Slidell, Inc. v. Millennium Inorganic Chem., Inc.</u>, 460 F.3d 1047, 1054 (8th Cir. 2006)).

Pickar argues Instruction No. 14, regarding the element of intimidation, is erroneous. Instruction No. 14 states:

> [To] take something "by intimidation" means to take it by saying or doing something that would make an ordinary person fear bodily harm.
>
> To prove that a taking was "by intimidation," the government is not required to prove that anyone was actually intimidated or afraid. The government is also not required to prove that the defendant intended to intimidate anyone. Rather, the government must simply prove, beyond a reasonable doubt, that the defendant intended to do or say what he in fact did or said, and that the defendant's words or actions were of a kind that would make an ordinary person fear bodily harm.

Instruction No. 14 is a correct statement of the law. <u>See</u> <u>Yockel</u>, 320 F.3d at 824. We find no abuse of the district court's broad discretion in instructing the jury.

### C.     District Court's Examination of a Government Witness

Pickar claims the district court became an advocate when questioning a witness. We view the district court's questioning "in the context of the entire record by employing a balancing test to determine overall fairness." <u>United States v. Henderson</u>, 770 F.2d 724, 730 (8th Cir. 1985).

Judges may question witnesses called by either party pursuant to Fed. R. Evid. 614(b). The district court may question witnesses to clarify "legal and factual matters" so long as the court "remains impartial and does not become an advocate for either

side." Id. at 729. The district court "has the prerogative, and at times the duty, of eliciting facts [it] deems necessary to the clear presentation of the issues." Dranow v. United States, 307 F.2d 545, 572 (8th Cir. 1962).

The district court questioned Sperbeck, the government's witness, to clarify Sperbeck's knowledge of exhibits offered by the government regarding whether Citizens Bank was FDIC-insured. The district court was permitted to ask these questions under Fed. R. Evid. 614(b). The district court remained impartial and did not become an advocate for the government. The district court's questioning did not affect the fairness of the trial, and the questioning was permissible.

### D.    Show-Up Identification

Pickar alleges his right to due process of law was violated when the district court denied his motion to suppress and admitted evidence of the show-up identification, which Pickar characterizes as unduly suggestive and unreliable. We review factual findings for clear error and the denial of a motion to suppress de novo. See United States v. Hines, 387 F.3d 690, 694 (8th Cir. 2004). We will affirm the district court's denial of Pickar's motion to suppress "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. (quoting United States v. Welerford, 356 F.3d 932, 935 (8th Cir. 2004)).

In Neil v. Biggers, 409 U.S. 188, 198 (1972), the Supreme Court held, with respect to the admission of an out-of-court identification, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." Even a suggestive out-of-court identification may be admissible if reliable. Id. at 199. Our court has summarized the law as follows:

"A crime victim's identification of the defendant is admissible unless it is based upon a pretrial confrontation between the witness and

the suspect that is both impermissibly suggestive *and* unreliable." United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006) . . . . "An identification is unreliable if its circumstances create a very substantial likelihood of irreparable misidentification." [Id. at 910]. The relevant circumstances include "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation.'" United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).

United States v. Jones, 535 F.3d 886, 891 (8th Cir. 2008).

### 1. Suggestiveness

The show-up identification was not unduly suggestive. We have held "[a]bsent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations." United States v. King, 148 F.3d 968, 970 (8th Cir. 1998) (quoting Russell v. United States, 408 F.2d 1280, 1284 (D.C. Cir. 1969)). Pickar was handcuffed and standing in front of a marked police cruiser. Pickar stood between an officer in uniform and an officer in plainclothes, with one of the officers shining a small flashlight in Pickar's face. Pickar stood in the bank's parking lot, about twenty to thirty feet from the bank's windows. The witnesses stood inside the bank and looked through the tinted windows to identify Pickar.

These facts are similar to those in Martinez, where the suspected bank robber was driven to the bank in a police car, then stood on a sidewalk in front of the bank's windows, handcuffed next to police officers. Martinez, 462 F.3d at 911. We held such a show-up identification was not unduly suggestive and stated, "[n]ecessary incidents of on-the-scene identifications, such as the suspect[] being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive." Id. (quoting King, 148 F.3d at 970). The only remarkable difference here is an officer was shining a small flashlight in Pickar's face.

The facts of the case at bar are distinguishable, for example, from those in Clark v. Caspari, 274 F.3d 507, 509 (8th Cir. 2001), where two African-American defendants were handcuffed and "forced to lie face down" on a driveway while an "officer with a shotgun stood over them." The defendants were "surrounded by white male police officers," and the witnesses saw one of the defendants "being hauled to his feet" by an officer. Id. In that case, we held the procedures used for the show-up identification "were improperly suggestive" and "increased the possibility of misidentification." Id. at 511. Pickar's show-up identification was materially less suggestive than in Clark.

### 2. Reliability

Even if the show-up identification procedure employed in this case were unduly suggestive, such procedure was reliable. Blackwell, Comfort, and Forrey each had a good opportunity to view Pickar, and they paid sufficient attention to him. Blackwell, Comfort, and Forrey provided earlier descriptions of Pickar generally consistent with Pickar's appearance, clothing, age, and facial hair. Blackwell, Comfort, and Forrey expressed confidence identifying Pickar as the robber. Even though the identification testimony from Bartsch was arguably weaker, it was still reliable. Bartsch was standing at the counter next to Pickar when Pickar demanded money, provided a description of Pickar consistent with the other descriptions, and was confident when he identified Pickar as the robber. See Neil, 409 U.S. at 199 (listing factors to gauge reliability under the totality of circumstances); Jones, 535 F.3d at 891 (same). Because the show-up evidence was reliable under the totality of the circumstances, the district court did not err in denying Pickar's motion to suppress.

### E. Sentence

Finally, we consider Pickar's challenge to his sentence. Pickar's Presentence Investigation Report (PSR) listed nearly twenty prior adult convictions, including one conviction for aggravated robbery, in violation of Minn. Stat. § 609.245, and two convictions for fleeing a police officer in a motor vehicle, in violation of Minn. Stat. § 609.487(3). Pickar's PSR classified his aggravated robbery and fleeing convictions

as crimes of violence, as defined in U.S.S.G. § 4B1.2, and recommended Pickar be sentenced as a career offender under U.S.S.G. § 4B1.1. To qualify as a career offender under U.S.S.G. § 4B1.1, a defendant must have at least two prior felony convictions for a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.

Pickar objected to the PSR's recommendation regarding his career offender status, denying his fleeing convictions qualified as predicate offenses. After the district court overruled Pickar's objections to the PSR and sentenced him as a career offender, we held the crime of fleeing a police officer in a motor vehicle, in violation of Minn. Stat. § 609.487(3), does not constitute a crime of violence for purposes of § 4B1.1. See United States v. Tyler, 580 F.3d 722, 726 (8th Cir. 2009). But see United States v. Dismuke, 593 F.3d 582, 588-96 & nn.3 & 7 (7th Cir. 2010) (holding Wisconsin's vehicular-fleeing offense, Wis. Stat. § 346.04(3), qualified as a violent felony after collecting cases from the Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits, and declaring "our conclusion here . . . actually parts company with just one circuit, the Eighth, in Tyler, 580 F.3d at 726"); United States v. McConnell, 605 F.3d 822, 826-30 (10th Cir. 2010). Tyler and our prior precedent rule compel reversal. See Drake v. Scott, 812 F.2d 395, 400 (8th Cir. 1987) ("One panel of this Court is not at liberty to disregard a precedent handed down by another panel.").

Because the district court improperly calculated Pickar's advisory Guidelines range, we vacate his sentence and remand for resentencing. We need not address Pickar's alternative argument that his 210-month sentence was substantively unreasonable. See, e.g., United States v. Kane, 552 F.3d 748, 757 (8th Cir. 2009) (declining to decide whether a sentence was substantively reasonable where the district court committed procedural error), petition for cert. filed, __ U.S.L.W. __ (U.S. Apr. 6, 2010) (No. 09-10146).

## III.  CONCLUSION

We affirm Pickar's conviction.  We vacate Pickar's sentence and remand to the district court for resentencing.

_____