# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3085
_____

United States of America

*Plaintiff - Appellee*

v.

Tyrice G. Royston

*Defendant - Appellant*

_____

No. 15-3202
_____

United States of America

*Plaintiff - Appellee*

v.

Tyrice G. Royston

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: December 16, 2016
Filed: March 10, 2017
[Unpublished]

_____

Before WOLLMAN and SMITH, Circuit Judges, and WRIGHT,[1] District Judge.

_____

PER CURIAM.

We consolidate these two appeals brought by Tyrice G. Royston, who was convicted of two counts of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, following separate trials. The district court[2] sentenced Royston to 240 months' imprisonment on each count and ordered that 22 months of the second sentence run consecutively to the first, for a total sentence of 262 months' imprisonment. Royston argues that there was insufficient evidence to support his convictions, that the district court erred in denying his motions for judgment of acquittal, and that his sentence is substantively unreasonable. We affirm.

Given Royston's challenge to the sufficiency of the evidence, we recount the facts in some detail. On March 17, 2014, Christopher Booker drove Pamela Lathon's rental vehicle to a residence in St. Louis, Missouri, where he and Lathon picked up Royston. They thereafter picked up a man who went by the name "June Bug," and together the four headed to Essex, Missouri, where they planned to rob the First Commercial Bank.

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

On the way to Essex, Booker stopped at a hardware store, where he purchased plastic zip ties that he gave to Royston and June Bug. Booker also gave the men reflective vests and plastic gloves to wear. Booker told them, "Be calm. Don't draw attention to yourself. Go in and get out." Booker then drove to the bank, circling it once before parking nearby, whereupon Royston and June Bug exited the vehicle.

Angela Malloy, a teller, and Billie Shelton, a head teller and branch manager, were working at the First Commercial Bank in Essex that day. The bank was then insured by the Federal Deposit Insurance Corporation (FDIC). At approximately 11:30 a.m., two men entered the bank wearing reflective vests. The men approached the teller stations and jumped over the counter, knocking the women to the floor and causing significant injury to Malloy's back. One of the men grabbed Malloy's hands and told her that if she rolled over, he would not hurt her. As Malloy lay on her stomach, the man used zip ties to secure her hands behind her back and to bind her feet. Meanwhile, the other man—later identified as Royston—used zip ties to secure Shelton's hands, telling her to "shut up so he wouldn't have to hurt [her]." Royston and June Bug then rummaged through the tellers' cash drawers and the bank's small vault, stealing the cash. The robbery was recorded by the bank's video surveillance system.

Lathon estimated that Royston and June Bug were inside the bank for ten minutes. They quickly exited the building and entered the vehicle. The four returned to St. Louis, where they divvied up $34,000-plus taken in the robbery.

Booker later planned a second robbery. Royston and a man named Alexander Trotter agreed to execute it, along with Lathon's help. Lathon picked up Royston and Trotter on May 20, 2014, in compliance with Booker's text message instruction. Before leaving St. Louis in Lathon's white, four-door car, Royston said that "he needed to get some heat," which Lathon understood to mean a gun. At Royston's request, they stopped at a residence before heading to Morley, Missouri.

Near Morley, they met briefly with Booker, who had decided to stay at a nearby residence during the robbery. After Booker gave some final instructions, Lathon drove Royston and Trotter to the First Commercial Bank in Morley. At Booker's request, Lathon had brought two cans of pepper spray with her, which Royston and Trotter each took one of before entering the bank. Royston told Trotter to "be calm, relax, . . . follow [Royston's] lead and to get in and get out quickly." The two men then entered the bank.

Sandra Glueck and Anita Wubker were working at the FDIC-insured First Commercial Bank that day. At approximately 1:20 p.m., two men walked into the bank. Glueck was speaking on the telephone when a man—later identified as Royston—approached her station. Wubker asked if she could help, and Royston walked over to her station, saying that he would like to set up a checking account. After some discussion, Royston said, "You know what I want." Wubker looked over to Glueck with "this look of total fear, . . . like she was frozen, total frozen fear."

Trotter then went behind the counter. He sprayed Glueck in the face with pepper spray, pushed her to the ground, and bound her hands so tightly with a zip tie that they turned blue. Wubker complied with Royston's order to kneel on the floor, following which he secured her hands with a zip tie. Royston and Trotter then rummaged around, saying, "Where's the money?" The men found Wubker's keys and opened her cash drawer, taking the money therein and the money from a nearby safe. For good measure, they also grabbed the women's purses before exiting the bank.

Meanwhile, a customer had pulled up to the bank's drive-through window. As the customer waited, she could not see the tellers, but she saw two people exit the bank and enter a white vehicle, whereupon she dialed 911. Glueck was able to stand up, walk over to a phone, push the receiver off its cradle, and dial 911 with her nose. Law enforcement officers soon arrived and relayed to dispatch that the suspects had left the scene in a white, four-door car.

Missouri State Highway Patrol Trooper Richard Owens stopped Lathon approximately fourteen miles from Morley. Lathon could not explain where she had been or identify the two passengers in her vehicle. After discovering that Lathon's license plate number was not registered to her vehicle, Owens asked the passengers to exit and then secured them in handcuffs.

Upon obtaining Lathon's consent to search the vehicle, Owens discovered a sheer silk bag filled with bundles of cash. After the car was secured and impounded, law enforcement officers searched the vehicle pursuant to a warrant. The contents of the vehicle included, among other things, a silk bag containing $11,588.05 in cash; a .380 caliber handgun and a loaded magazine; a black zip tie; a can of pepper spray; and miscellaneous clothes, hats, and gloves.

Following his arrest, Royston agreed to speak with Special Agent Dan Zwiesler of the Federal Bureau of Investigation (FBI). Royston confessed that he and a man he knew as "Rillo" had robbed a bank in Morley, that Booker had planned the robbery, and that Lathon had driven the getaway vehicle.

The next day, FBI Special Agent Brian Ritter interviewed Royston, who again confessed to committing the Morley bank robbery. He claimed that the gun was his but denied bringing it inside the bank during the robbery. Royston further confessed that he—along with Lathon, Booker, and another man whose name he did not know—had robbed a bank in Essex in March 2014. Royston explained that he was one of the men who entered the bank in Essex and robbed it, and he identified himself in a still image taken from the video of the robbery.

Royston was charged in separate indictments with robbing the Essex and Morley banks. Despite his confessions, Royston pleaded not guilty to both charges. The government first tried Royston on the charge of robbing the First Commercial Bank in Morley. To prove its case, the government called as witnesses Lathon,

Glueck, Wubker, the customer who called 911, Trooper Owens, Special Agents Zwiesler and Ritter, and several law enforcement officers who were involved in the investigation. Two weeks later, the government tried Royston on the charge of robbing the First Commercial Bank in Essex and called as witnesses Lathon, Malloy, Shelton, and Special Agent Ritter. The district court denied Royston's motions for judgment of acquittal and submitted the cases to the juries, both of which, unsurprisingly, convicted Royston.

A presentence report determined that Royston's total offense level was 33, that his criminal history category was V, and that his advisory sentencing range under the U.S. Sentencing Guidelines Manual (Guidelines) was 210 to 262 months' imprisonment. The district court sentenced Royston to the statutory maximum sentence of 240 months' imprisonment on each count. See 18 U.S.C. § 2113(a) (setting forth a maximum term of imprisonment of "not more than twenty years"). To reach a total punishment of 262 months' imprisonment, the district court ordered that 218 months of the second sentence run concurrently with the first sentence and that the remaining 22 months run consecutively. See 18 U.S.C. § 3584(a) (providing that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders . . . that the terms are to run consecutively").

As set forth earlier, Royston argues that the evidence was insufficient to support his convictions and that the district court erred in denying his motions for judgment of acquittal. We review the sufficiency of the evidence to support a conviction *de novo*, viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences. United States v. Pickar, 616 F.3d 821, 825 (8th Cir. 2010). We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. Section 2113(a) defines bank robbery as taking "by force and violence, or by intimidation . . . from the person or presence of another . . . any property or money or any other thing of value, belonging to or in the care, custody, control, management, or possession of,

any bank." The statute defines the term "bank" to include "any institution the deposits of which are insured by the [FDIC]." 18 U.S.C. § 2113(f). Royston has not identified which element or elements the government failed to prove, and we conclude that the government fully discharged its burden of proof in both cases.

The district court properly instructed the jury on the elements of the bank robbery of the First Commercial Bank in Essex, and the government presented overwhelming evidence to support each element. Video footage of the robbery was played for the jury, and Special Agent Ritter testified that Royston identified himself as one of the men depicted in a still image from one of the videos. Ritter further testified that Royston confessed to robbing the bank. The government presented evidence of the FDIC insurance certificates. Suffice it to say that the district court did not err in denying Royston's motion for judgment of acquittal.

Likewise, the district court gave the proper instruction on the elements of the offense concerning the Morley bank robbery, and the government likewise presented overwhelming evidence to support each element in the case. Among other things, video footage of the robbery was played for the jury, and Special Agents Zwiesler and Ritter testified that Royston confessed separately to each of them that he had committed the Morley bank robbery. The government presented evidence of the FDIC insurance certificates. Again, the district court did not err in denying Royston's motion for judgment of acquittal.

Royston challenges his sentence as substantively unreasonable. We consider the totality of the circumstances when reviewing the substantive reasonableness of a sentence, and we will not reverse absent a showing that the district court abused its discretion. Gall v. United States, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in

weighing those factors." United States v. Johnson, 688 F.3d 444, 448 (8th Cir. 2012) (quoting United States v. Moore, 565 F.3d 435, 438 (8th Cir. 2009)). On appeal, we may apply a presumption of reasonableness to a sentence within the advisory Guidelines range. Gall, 552 U.S. at 51.

Royston contends that the district court erred by giving undue weight to the nature and circumstances of the offenses and by failing to give adequate weight to Royston's personal history. The district court noted at sentencing that "the evidence at each of the two trials was simply overwhelming that you were guilty as charged." The district court considered Royston's sentencing memorandum, which requested a downward variance based partly on Royston's anxiety, depression, and substance abuse, as well as the PSR, which set forth his mental-health and substance-abuse history. In light of the district court's discretion "to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence," United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009), we find no error in the district court's decision that the nature and circumstances of the offenses, along with Royston's lengthy criminal history, warranted "a harsh punishment" of 262 months' imprisonment.

Royston argues that the district court erred by failing to consider the more lenient sentences that were imposed upon Lathon for her role in the Essex and Morley bank robberies and Trotter for his role in the Morley bank robbery.[3] Section 3553(a)(6) requires the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

---

[3]Royston also argued that Booker, "the undisputed mastermind of both bank robberies, received a sentence of 240 months in each case," even though he was more culpable than Royston. It appears that Royston has misstated the record, however, for the judgments filed in Booker's two criminal cases indicate that the district court imposed consecutive sentences of 240 months' imprisonment and 84 months' imprisonment to reach a cumulative sentence of 324 months' imprisonment.

guilty of similar conduct." Although the government considered Lathon to be as culpable as Royston, there were substantial distinctions between the two. Lathon cooperated with the government, pleaded guilty, testified against Royston in both of his trials, and had a total criminal history score of zero. Similarly, any sentence disparity between Royston and Trotter was warranted. Trotter participated in only the Morley bank robbery, pleaded guilty, and had a total criminal history score of zero. The district court thus did not abuse its discretion in sentencing Royston as it did. Johnson, 688 F.3d at 448 ("[I]t is not an abuse of discretion for a district court to impose a sentence that results in a disparity between co-defendants when there are 'legitimate distinctions' between the co-defendants." (alteration in the original) (quoting United States v. Davis-Bey, 605 F.3d 479, 483 (8th Cir. 2010))).

The judgments are affirmed.

_____